[Civ. No. 27598. Second Dist., Div. Two. Oct. 14, 1963.]

GORDON McRAE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; FRANK HALE et al., Real Parties in Interest.

Frank J. Waters and Armond M. Jewell for Petitioner.

No appearance for Respondent.

Hosmer & Eagleson and Donald P. Lane for Real Parties in Interest.

HERNDON, J.— Petitioner herein seeks a writ of mandate or prohibition to restrain respondent court from ordering the taking of petitioner's deposition for discovery purposes during the time an arbitration is pending between the parties. He also seeks to set aside an order of respondent court denying and striking his motion for the appointment of a receiver and for the issuance of a preliminary injunction.

On February 1, 1963, Frank Hale, a real party in interest herein, filed an action against petitioner seeking an accounting of an alleged partnership business formerly carried on by the parties. The complaint alleged in substance that this partnership was dissolved on May 15, 1961; that petitioner undertook to wind up its affairs; that prior to and since the dissolution petitioner had collected large sums of money and applied them to his own use and refused to account to the plaintiff for his proportionate share thereof.

On April 15, 1963, petitioner filed his answer to said complaint, in which, in addition to certain general denials, he set forth the affirmative defense that "[t]he matters, claims and disputes set forth in plaintiff's complaint are subject to arbitration as such arbitration is provided for in said written agreement dated May 15, 1961."

On the same date, and in the same action, petitioner filed a "Petition for Order to Arbitrate" wherein he sought to invoke the provisions of said agreement relating to arbitration. This petition also sought to extend the order to the Redondo

Sport Fishing Co., a corporation. On May 23, 1963, petitioner filed a notice of motion for order appointing receiver and for preliminary injunction, in which he again named the Redondo Sport Fishing Co. as a ''respondent'' and in which he requested that a receiver be appointed to take over and operate its business and assets and that the company and Frank Hale be enjoined from performing numerous acts.

Although the business dealings involving the parties directly or indirectly concerned with the instant matter are exceedingly complex and subject to sharply conflicting claims, it appears that the Redondo Sport Fishing Co., a corporation, is a going business, 40 per cent of which is owned by petitioner, 40 per cent by Frank Hale and 20 per cent by one Presley Fiscus, who has not been made a party to any of the presently pending proceedings. Although petitioner and Hale signed the agreement of May 15, 1961, both in their individual capacities and as officers of the corporation, the paragraph therein relating to arbitration provides only that: ''If any claim or controversy shall arise between [petitioner] and Hale due to any of the provisions of this agreement, and said dispute cannot be settled by them, each shall select an arbiter who shall in turn select a third arbiter. This group of three shall act as a board of arbitration and the arbitrators shall decide the point in dispute by majority vote.''

By its minute order dated May 28, 1963, the court ordered arbitration as to petitioner and Hale and continued the hearing on the motion for the appointment of a receiver and for the issuance of preliminary injunctions to June 25, 1963.[1] On May 29, 1963, petitioner noticed a motion for an order staying all the proceedings in the accounting action pending completion of the arbitration ordered between the parties. On June 14, 1963, the Redondo Sport Fishing Co., appearing specially, and Frank Hale filed their notices of motions to strike petitioner's motion for the appointment of a receiver. It was indicated that these motions would be based upon the

---

[1]Subsequently, on August 30, 1963, the court denied a motion to correct the order of May 28, 1963, to show the ruling made as to the requested order to arbitrate sought against Redondo Sport Fishing Co. In this later ruling the court stated that the corporation was not a party to the action and no order had been made authorizing its joinder as a party, and therefore the court felt it had no jurisdiction either to order or refuse to order arbitration as to it. The propriety of this ruling is not now before us.

fact that the corporation was not a party to the accounting action, that neither its assets nor its business activities were the subject matter of the action, and that the requested order for arbitration had not been granted as to it.

A minute order dated June 25, 1963, states that petitioner's motion to stay the accounting action was granted and that his motions for the appointment of a receiver and for a preliminary injunction were argued and denied. This order also states that the motions to strike were granted and that, pursuant to stipulation, a named arbitrator was appointed "with full powers of a Board of Arbitration."

On July 2, 1963, Frank Hale obtained the issuance of a "Subpena Duces Tecum re Deposition in a Special Proceeding in Arbitration" and also filed a "Notice of Taking Deposition (in a Special Proceeding in Arbitration)" and a "Notice of Motion for Order to Take Oral Deposition of Gordon McRae for Purpose of Discovery . . . [and] Evidence. . . ." On July 8, 1963, petitioner filed a notice of motion seeking to quash the subpoena and requesting a protective order.

By a minute order dated July 22, 1963, supported by a written opinion, the trial court denied the motion to quash and ordered the taking of petitioner's deposition "both for purposes of discovery and for use as evidence." As indicated, it is the alleged impropriety of this order which constitutes petitioner's first ground for seeking relief in this court. We find his contentions in this regard to be meritorious.

Title 9 of part III of the Code of Civil Procedure as enacted in 1961 (Stats. 1961, ch. 461, § 2) makes comprehensive provision for all judicial proceedings relating to arbitration. Chapter 1 of this title sets forth certain definitions and general provisions relating to arbitration; chapter 2 covers the enforcement of arbitration agreements; chapter 3 sets forth the manner in which the arbitration itself is to be conducted; chapter 4 relates to the methods for enforcement of the award resulting from the arbitration; and chapter 5 sets forth general provisions relating to the *judicial proceedings* that are authorized in connection with the arbitration itself.

It was the position of the real party in interest in the trial court that since section 2035 of the Code of Civil Procedure provides that "The word 'action' as used in this article is to be construed, whenever it is necessary so to do, as including a

special proceeding of a civil nature," the court might order the taking of a deposition for discovery purposes in aid of arbitration although the arbitrator had not requested such action. In fact, the arbitrator is expressly denied the power to order a deposition for such purpose. (§ 1283.) Reliance also was placed upon section 2016, subdivision (a), which provides that: "... Such depositions may be taken in an action at any time after the service of the summons or in a special proceeding after the service of the petition. ..."

■ No attempt need be made to define the meaning of the expression "special proceeding" in order to determine that, with respect to the limited issue here presented, the arbitration itself is not a "special proceeding" as contemplated by the provisions of the Code of Civil Procedure relating to depositions. ■ As heretofore indicated, the "judicial proceedings" surrounding the arbitration itself are restricted by the statute to: (1) the enforcement of the agreement to arbitrate (chapter 2); and (2) the enforcement of the award made following arbitration (chapter 4).

Section 22 of the Code of Civil Procedure provides: "An action is an ordinary proceeding *in a court of justice* by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Italics added.) Section 23 provides: "Every other remedy is a special proceeding."

It seems manifest that in the present setting the two sections must be read together, and thus section 23 actually provides: "Every other remedy is a special proceeding [*in a court of justice* ... ]." (Italics added.) Whether depositions might be permitted during the pendency of, and in aid of, the judicial proceedings authorized to determine whether or not an agreement should be enforced or a subsequent award confirmed we need not now decide. Here we hold only that such depositions for discovery purposes may not be ordered by the court in aid of the arbitration itself.

■ Historically "an arbitration is a *substitute for proceedings in court.*" (Emphasis added.) (*California etc. M.E. Church* v. *Seitz,* 74 Cal. 287, 291 [15 P. 839]. Also, *Rives-Strong Bldg.* v. *Bank of America,* 50 Cal.App.2d 810, 815 [123 P.2d 942].) Though at one time viewed with disfavor, there is today a strong public policy in favor of arbitration and of settling arbitrations speedily with a minimum of court interference. *(Government Employees Ins. Co.* v.

*Brunner*, 191 Cal.App.2d 334, 340 [12 Cal.Rptr. 547].)

█ As stated in *Utah Const. Co.* v. *Western Pac. Ry. Co.*, 174 Cal. 156, 159 [162 P. 631] : ''The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons *who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.* . . .'' (Italics added.) (Also see *Homestead Sav. & Loan Assn.* v. *Superior Court*, 195 Cal.App.2d 697, 700 [16 Cal. Rptr. 121] ; *Turner* v. *Cox*, 196 Cal.App.2d 596, 602-603 [16 Cal.Rptr. 644] ; and cases cited therein.)

When it has been determined that arbitration should be pursued and all judicial proceedings have been suspended until completion of the arbitration, it would be wholly incompatible with established policies of the law to permit the court thereafter to intervene in, and necessarily interfere with, the arbitration ordered. In large measure, it not only would preclude the parties from obtaining ''an adjustment of their differences by a tribunal of their own choosing,'' but it also would recreate the very ''delays incident to a civil action'' that the arbitration agreement was designed to avoid.

It is true, of course, that there is language to be found in certain decisions, written prior to the 1961 amendments to the Code of Civil Procedure, which fails to make the vital distinction between the ''judicial proceedings'' had in *aid* of arbitration and the arbitration itself. Thus, in *San Diego Tavern etc. Assn.* v. *Local Joint Executive Board*, 174 Cal. App.2d 246, 249 [344 P.2d 350], the general statement is made that ''A compulsory arbitration proceeding is a 'special proceeding.' All matters listed in part 3 of the Code of Civil Procedure are recognized as 'special proceedings,' and title 9 is that portion of part 3 covering arbitration. [Citations.]'' However, a reading of this decision makes clear that the court was there considering only the question of the allocation of costs made by the judgment confirming the award and was not deciding the character of the arbitration itself.

The problem presented in the last cited case not only would not arise under the 1961 statutes, but the manner in which it was eliminated serves further to clarify the distinction between the judicial proceedings and the arbitration itself. Thus section 1284.2, a part of chapter 3, relating to the arbitration itself, provides :

''Unless the arbitration agreement otherwise provides or

the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit.''

However, section 1293.2, which is a part of chapter 5 relating to the judicial proceedings themselves, provides: ''The court shall award costs upon any *judicial proceeding under this title* as provided in chapter 6 (commencing with section 1021) of title 14 of part 2 of this code.'' (Italics added.)

Therefore, in view of the clear statutory distinction between the judicial proceedings, i.e., the special proceedings referred to in the sections relating to depositions for discovery purposes, and the underlying purpose and policy favoring arbitration as a means of promptly settling disputes in a ''non-judicial'' tribunal of the parties' choice, it was improper to order the taking of petitioner's deposition for discovery purposes and the subpoena therefor should have been quashed.

Although not expressly cited by the trial court as a basis for its decision, the various papers filed by the parties in connection therewith make it appear that substantial weight was given to the fact that petitioner herein had succeeded in taking the deposition of Frank Hale, and in preventing the taking of his own deposition, prior to the time when he filed his petition to arbitrate. While such matters might well be considered by the court in determining whether an order for arbitration should issue (Code Civ. Proc., § 1281.2, subd. (a)[2]; *Homestead Sav. & Loan Assn.* v. *Superior Court, supra,* 195 Cal.App.2d 697, 701; *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, Amalgamated Clothing Workers,* 192 Cal.App.2d 268, 277 [13 Cal.Rptr. 446]), once such determination has been made and the order issued, the arbitration should not be disrupted in an effort to ''do equity.''

Petitioner's second point directed to the refusal to appoint a receiver and to grant a preliminary injunction is

[2]Section 1281.2, subdivision (a) provides: ''On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:

(a) The right to compel arbitration has been waived by the petitioner; . . .''

not well taken. Inasmuch as the corporation, against whom these ancillary measures were principally directed, was not a party to the original action and was not made a party to the arbitration ordered, it is questionable whether such ancillary order could have been regarded as within the power of the court. We need not determine this issue in the instant proceeding, for the record before us discloses that petitioner's motion was denied on its merits after argument. The court stated: "Assuming that the Redondo Sport Fishing Co. is properly before the Court, I don't think on its merits that either a receiver should be appointed or an injunction issued at this stage in this particular case."

The appointment of receivers for a going concern is a drastic remedy (*Golden State Glass Corp.* v. *Superior Court,* 13 Cal.2d 384, 393 [90 P.2d 75]), and they "are often legal luxuries, frequently representing an extravagant cost to the losing litigant." (*Elson* v. *Nuhan,* 45 Cal.App.2d 1, 5 [113 P.2d 474].)

Likewise, "injunction is an extraordinary power and should always be exercised with great caution" (*Family Record Plan, Inc.* v. *Mitchell,* 172 Cal.App.2d 235, 242 [342 P.2d 10]), and "[i]t is almost too well settled to require citation of authority that whether injunctive relief will be granted in a given case is a matter largely within the discretion of the trial court." (*Mallon* v. *City of Long Beach,* 164 Cal.App.2d 178, 186 [330 P.2d 423].)

There is nothing in the present record to indicate any abuse of the trial court's discretion in denying the drastic remedies here sought by petitioner. In fact, petitioner filed a declaration on March 21, 1963 (prior to his petition for arbitration), in support of his request for a protective order in which he alleged that "*both plaintiff and defendant are persons of present substantial assets of a rather unchanging nature.*" (Emphasis added.)

It is our conclusion that a writ of mandate should issue directing the respondent court to quash the subpoenas for the taking of petitioner's deposition previously issued and to deny Frank Hale's motions in regard thereto. The writ sought to compel the appointment of a receiver and the issuance of a preliminary injunction should be denied and the alternative writ heretofore granted, discharged.

It is so ordered.

Fox, P. J., and Ashburn, J., concurred.