[No. D038865. Fourth Dist., Div. One. Dec. 11, 2002.]

ALLISON ROLFE et al., Plaintiffs and Appellants, v.
CALIFORNIA TRANSPORTATION COMMISSION et al., Defendants
and Respondents;
SAN DIEGO REGIONAL TRANSPORTATION COMMISSION et al.,
Real Parties in Interest and Respondents.

## COUNSEL

Law Offices of Thomas D. Mauriello, Thomas D. Mauriello; Law Offices of Marco A. Gonzalez and Marco A. Gonzalez for Plaintiffs and Appellants.

John J. Sansone, County Counsel, and Thomas D. Bunton, Deputy County Counsel, for Defendant and Respondent County of San Diego.

Nossaman, Guthner, Knox & Elliott, Robert D. Thornton, John J. Flynn III and Maryela Martinez for Defendants and Respondents California Transportation Ventures, Koch Industries, Parsons Brinckerhoff, Transroute Corporation, Egis Project and San Diego Expressway L.P.

Bruce A. Behrens, Jeffrey A. Joseph, David J. Pettigrass and John Frederick Smith for Defendants and Respondents California Department of Transportation and California Transportation Commission.

John M. Kaheny, City Attorney, Bart C. Miesfeld, Deputy City Attorney; Daley & Heft, Robert W. Brockman, Jr.; and Scott E. Patterson for Real Party in Interest and Respondent City of Chula Vista.

Julie D. Wiley for Real Party in Interest and Respondent San Diego Regional Transportation Commission.

## OPINION

McCONNELL, J.—The issue in this case is whether Public Resources Code[1] section 5096.27 requires the California Department of Transportation (Caltrans) to obtain legislative approval before acquiring park property from the County of San Diego (the County) and converting it to nonpark use, when

---

[1]Statutory references are to the Public Resources Code except where otherwise specified.

the County purchased the property under the Cameron-Unruh Beach, Park, Recreational, and Historical Facilities Bond Act of 1964 (the Cameron-Unruh Act). (§ 5096.1 et seq.) We answer the question in the negative, and, accordingly, affirm the judgment.

BACKGROUND

State Route 125 South (SR125 South) is a proposed 11-mile toll road that would connect State Routes 54 and 905 in southern San Diego County. If SR125 South is built, the current alignment would require Caltrans, among others, to acquire from the County a portion of property referred to as Area 19, which is part of the Sweetwater Regional Park. The County bought Area 19 with a "state park bond fund" under the Cameron-Unruh Act.

In May 2000 Allison Rolfe and Preserve South Bay (together Rolfe) filed a petition for writ of mandate and complaint for injunctive relief against Caltrans and the County.[2] Rolfe alleged that under section 5096.27, Caltrans may not condemn Area 19 without first obtaining authorization from the Legislature to convert the park land to nonpark use. Rolfe sought an order vacating the alignment for SR125 South and curtailing further activity on the project absent legislative approval regarding Area 19.

Caltrans moved for judgment on the pleadings. The court granted the motion and judgment was entered for Caltrans on July 20, 2001.

DISCUSSION

I

*Standard of Review*

Judgment on the pleadings is proper when the "complaint does not state facts sufficient to constitute a cause of action against [the] defendant." (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii).) The grounds for the motion "shall appear on the face of the challenged pleading or from any matter of which the court . . . may take judicial notice pursuant to Section 452 or 453 of the Evidence Code." (*Id.*, subd. (d).)

We review the trial court's ruling on a motion for judgment on the pleadings independently, applying the same test as the trial court. We accept

---

[2]The pleading also named the following defendants: California Transportation Commission, California Transportation Ventures, Koch Industries, Parsons Brinckerhoff, Transroute International, Egis Project and San Diego Expressway L.P.; the pleading named San Diego Regional Transportation Commission and City of Chula Vista as real parties in interest. These entities are allegedly involved in approving, developing and operating SR125 South.

as true the plaintiff's factual allegations, and construe them liberally. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515-516 [101 Cal.Rptr.2d 470, 12 P.3d 720].)

II

*Section 5096.27*

In adding the Cameron-Unruh Act to the Public Resources Code,[3] the Legislature declared, "It is the responsibility of this State to provide and to encourage the provision of outdoor recreation opportunities for the citizens of California." (§ 5096.2, subd. (a).) The Legislature further found: "When there is proper planning and development, open space lands contribute not only to a healthy physical and moral environment, but also contribute to the economic betterment of the State, and, therefore, it is in the public interest for the State to acquire areas for recreation, conservation, and preservation and to aid local governments of the State in acquiring and developing such areas as will contribute to the realization of the policy declared in this chapter." (*Id.*, subd. (b).)

The Legislature authorized up to $150 million in bonds "to provide the moneys for the acquisition and development of lands needed for recreation purposes." (§§ 5096.3, subd. (c), 5096.4.) Of that amount, $40 million is available for grants to local agencies for the acquisition and development of property for park and beach purposes. (§ 5096.15.)

 Rolfe contends that Caltrans may not acquire Area 19 for road purposes without first obtaining legislative approval. Rolfe relies on section 5096.27, which provides in part: "There shall be an agreement or contract between the State and the applicant in the case of a state grant project which shall contain therein the provisions [(1)] that the property so acquired shall be used by the grantee only for the purpose for which the state grant funds were requested and [(2)] that no other use of the area shall be permitted except by specific act of the Legislature."

The trial court determined Caltrans is not required to obtain legislative approval before acquiring Area 19, because section 5096.27 concerns only the County's use of the property as the state's *grantee* of bond funds. Rolfe contends the court erred, because section 5096.27's clause "and that no other

---

[3]The Cameron-Unruh Act is found in chapter 1.6 of the Public Resources Code. Chapter 1.6 (added by Stats. 1963, ch. 1690, § 1, p. 3313), operative January 1, 1965, was subject to adoption by the people and was approved by the voters at the general election held November 3, 1964. (See § 5096.1.)

use of the area shall be permitted except by specific act of the Legislature" is not modified by the term *grantee* and means that *no* entity, including a state agency such as Caltrans, may convert park property purchased by a local agency under the Cameron-Unruh Act to nonpark use. We are unpersuaded.

"Our primary aim in construing any law is to determine the legislative intent. [Citation.] In doing so we look first to the words of the statute, giving them their usual and ordinary meaning." (*Committee of Seven Thou-sand v. Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708].) The plain language of section 5096.27 shows it applies solely to a contract between the State and a *grantee*, or local agency. It requires that such a contract contain two provisions, one of which is a provision that absent legislative approval the *grantee* may not use property acquired under the Cameron-Unruh Act for other than park or beach purposes. Section 5096.27 does not address a state agency's acquisition of park property purchased by a local public agency under the Cameron-Unruh Act.

Rolfe ignores section 5096.27's imposition of restrictions on the *grantee*, or local agency, under a contract between the grantee and the state, and asks us to consider in a vacuum the clause "*and that no other use of the area shall be permitted except by specific act of the Legislature.*" (Italics added.) Such an interpretation may promote the purposes of the Cameron-Unruh Act, but it is unsupported by the statutory language and rules of construction. Standing alone, the italicized phrase is nonsensical. Further, whenever possible, significance should be given to every word of a statute, and a construction that renders part of the statute surplusage should be avoided. (*Home Depot, U.S.A., Inc. v. Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1602 [49 Cal.Rptr.2d 302].)

Alternatively, Rolfe claims the term "grantee" in section 5096.27 should be interpreted to include the state when it acquires park land that was purchased by a local agency under the Cameron-Unruh Act. Again, however, section 5096.27 concerns a contract between the state and a local agency that has applied for bond funds. Without substantial revision, section 5096.27 is not reasonably susceptible to the interpretation Rolfe urges.

Additionally, the trial court's interpretation of section 5096.27 is supported by section 5096.15. " '[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' " (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1065 [77 Cal.Rptr.2d 202, 959 P.2d 360].) Under section 5096.15,

subdivisions (a) through (c), $110 million in bond funds is available to the state for its acquisition of property for parks, beaches and wildlife management. ▇ The Cameron-Unruh Act, however, does not require that a state agency such as Caltrans obtain legislative approval before converting park land the state acquired with bond funds to nonpark uses such as a road. It follows that a state agency is not required under section 5096.27 to obtain legislative approval before converting park lands acquired from a local agency to nonpark uses.

Although the above discussion is dispositive, we also note the court's interpretation of Public Resources Code section 5096.27 is consistent with Streets and Highways Code section 103.5, which provides: "Subject to Sections 1240.670, 1240.680, and 1240.690 of the Code of Civil Procedure, the real property which [Caltrans] may acquire by eminent domain, or otherwise, includes *any property dedicated to park purposes, however it may have been dedicated*, when the commission has determined by resolution that such property is necessary for state highway purposes." (Italics added.) ▇ Public agencies, as well as private citizens, may dedicate property to specified public uses. (See *City of Oakland v. Burns* (1956) 46 Cal.2d 401, 405 [296 P.2d 333]; *Arques v. City of Sausalito* (1954) 126 Cal.App.2d 403, 405 [272 P.2d 58].) A public agency acquiring property under the Cameron-Unruh Act is required to dedicate the property to park or other recreational use. (§ 5096.27.) Rolfe concedes that Streets and Highways Code section 103.5 applies to property purchased by local agencies under the Cameron-Unruh Act.

▇ We presume the Legislature was aware of the Cameron-Unruh Act, and specifically Public Resources Code section 5096.27, when it amended Streets and Highways Code section 103.5 (Stats. 1975, ch. 1239, § 29, p. 3152). (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 779, fn. 3 [35 Cal.Rptr.2d 814, 884 P.2d 645] [Legislature is presumed to be aware of all existing laws when it passes statute].) Had the Legislature intended to make legislative approval a prerequisite to Caltrans's acquisition of park land purchased by a local agency under the Cameron-Unruh Act, it could easily have amended Streets and Highways Code section 103.5 to so state.

Rolfe contends the trial court erred by relying in part on Streets and Highways Code section 103.5. Rolfe asserts that because there is no showing Caltrans adopted a resolution of necessity to acquire Area 19, the applicability of the statute in interpreting Public Resources Code section 5096.27 is not "ripe" for adjudication. ▇ The ripeness requirement precludes courts from issuing purely advisory opinions, for instance in cases "in which parties seek a judicial declaration on a question of law, though no actual

dispute or controversy ever existed between them requiring the declaration for its determination." (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 73, p. 133; *Farm Sanctuary, Inc. v. Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 502 [74 Cal.Rptr.2d 75].) Here, an actual controversy exists between the parties, and Streets and Highways Code section 103.5 is germane to Rolfe's allegation that Caltrans cannot proceed with SR125 South absent legislative approval. If the project proceeds, a resolution of necessity will be required before Caltrans may acquire Area 19 through eminent domain (Code Civ. Proc., § 1240.040), but whether it has adopted a resolution at this point is immaterial.[4]

Each of Rolfe's causes of action is based on the theory that section 5096.27 precludes Caltrans from acquiring Area 19 absent legislative approval. Because the theory is incorrect, the court properly granted Caltrans's motion for judgment on the pleadings.

## DISPOSITION

The judgment is affirmed. The respondents are entitled to costs on appeal.

Benke, Acting P. J., and Nares, J., concurred.

---

[4]Rolfe also contends the court's interpretation of section 5096.27 raises "mischievous implications." Rolfe asserts a public agency could obtain bond funds under the Cameron-Unruh Act under the guise the property would be dedicated to park use, but then sell the property to a third party "for real estate speculation." The issue of whether a local agency is precluded from voluntarily selling park land purchased under the Cameron-Unruh Act is not before us, as this case arises from the prospect of acquisition through the exercise of Caltrans's eminent domain power.