Filed 1/26/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VIOREL BUCUR et al., | D068689 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. CIVDS1400473) |
| MIRZA SHAMIM AHMAD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Michael A. Sachs, Judge. Affirmed. Motion for sanctions on appeal granted.

George A. Saba, for Plaintiffs and Appellants.

Littler Mendelson and Margaret H. Gillespie, for Defendant and Respondent.

Viorel Bucur (Bucur) and Lacramiora Bucur, husband and wife (together, Appellants), owned two long distance trucking companies that contracted with Fedex

Ground Package System, Inc. (FedEx) to provide linehaul (long distance trucking) services. Mirza Shamim Ahmad was employed by FedEx as a senior linehaul manager.[1]

This case represents Appellants' fifth unsuccessful attempt to recoup damages arising out of FedEx's termination of their linehaul contracts. They appeal from a superior court judgment granting judgment on the pleadings and awarding sanctions under Code of Civil Procedure section 128.7[2] against them and their attorney. We affirm and grant Ahmad's motion for additional section 128.7 sanctions on appeal against Appellants and their trial counsel.

FACTUAL AND PROCEDURAL BACKGROUND[3]

*I. Prelitigation Events*

In 2001 and 2005, Bucur entered into two linehaul contracts with FedEx; the contracts had a fair market value of $1.8 million. In 2010, FedEx decided to terminate the contracts with Bucur because of his poor safety performance, but in July 2010, Bucur

---

[1]   Respondent's motion to take judicial notice of certain specified documents pursuant to California Rules of Court, rule 8.252 and California Evidence Code sections 452 and 459 is granted.

[2]   All statutory references are to the Code of Civil Procedure unless otherwise stated.

[3]   To provide context for the issues before us, we first discuss Appellants' prior cases and their related appellate and arbitral proceedings, which we call *Bucur I*, *II*, *III* and *IV*. The history of *Bucur I* and *Bucur III* is taken largely from the unpublished opinion in *Bucur v. Ujkaj* (June 11, 2015, EO60451) [nonpub. opn.] (*Bucur III*). California Rules of Court, rule 8.1115(a) and (b)(1), allow citation to an unpublished opinion "[w]hen the opinion is relevant under the doctrines of law of the case, res judicata or collateral estoppel."

agreed to sell the FedEx contracts to Wasarhelyi for $500,000. Wasarhelyi later sold one of the contracts to Aldi Ujkaj for $800,000.

## II. Bucur I

In April 2011, Wasarhelyi filed a complaint for breach of contract against Bucur and his related companies, alleging that they had refused to tender various assets to him as required by his purchase of the linehaul contracts, had interfered with his operation of the linehaul contracts, and had wrongfully diverted payments from FedEx that were owed to him. Appellants in their first amended cross complaint (FACC) sued Wasarhelyi, Ujkaj, Rodriguez Transport (Rodriguez) and others for breach of oral contract, fraud, conversion, rescission of all of the linehaul contract sales agreements, and declaratory relief, alleging that Bucur and Wasarhelyi had orally agreed that Bucur would pay Wasarhelyi two cents per mile to pose as the holder of the hauling contracts to satisfy FedEx's safety concerns and that Ujkaj and Rodriguez bought the hauling contracts from Wasarhelyi with full knowledge of the litigation between him and Bucur. Bucur did not allege that FedEx was responsible for Wasarhelyi's diversion of its revenue, and Appellants admitted in their first amended complaint that they "are not seeking relief from FedEx" but only named FedEx as a necessary party to their rescission claim.

The parties ultimately stipulated to bifurcate the cross-claims against Ujkaj and, after Wasarhelyi attained a judgment confirming his interest in the FedEx linehaul contracts, Bucur purported to dismiss the cross-complaint against Ujkaj and Rodriguez without prejudice.

3

### III.  Bucur II

While *Bucur I* was ongoing, Appellants initiated a second lawsuit in Riverside County Superior Court against FedEx, Ahmad, and Wasarhelyi, alleging that FedEx and Ahmad wrongfully terminated the linehaul contracts and forced Appellants to sell the linehaul contracts to Wasarhelyi.  FedEx moved to compel arbitration under the terms of the linehaul contracts.  Upon Appellants' stipulation, the court granted the motion.  In October 2013, Appellants initiated arbitration proceedings on the claims in their operative complaint.  On April 14, 2015, the arbitrator granted a motion to dismiss brought by FedEx and Ahmad.

### IV.  Bucur III

The same day final judgment was entered in *Bucur I* and while *Bucur II* was still pending in Riverside County Superior Court, Bucur filed a complaint, in propria persona, against Ujkaj and Rodriguez, asserting causes of action for intentional and negligent interference with contract, intentional and negligent interference with prospective economic advantage and conversion based on allegations that those defendants knew about and participated in the fraud perpetrated by Wasarhelyi relating to the FedEx linehaul contracts.  Appellants did not name FedEx or Ahmad as defendants.

On demurrer, the trial court determined Appellants' complaint was barred by collateral estoppel.

On Bucur's appeal, Division Two of our court concluded that the issues raised in Bucur's complaint were identical to those asserted (unsuccessfully) in *Bucur I*, to wit, that he was the rightful owner of the linehaul contracts and that the rejection of that claim by

4

the court and the jury in *Bucur I* operated to collaterally estop Bucur's claims in *Bucur III* because he would have had to establish that he had a recognized interest in the FedEx contracts to prevail against Ujkaj and Rodriguez on his claims for intentional interference with contract, intentional and negligent interference with prospective economic advantage, and conversion.

## V.  Bucur IV

In April 2013, while *Bucur I* and *Bucur II* were pending and days before the filing of the lawsuit in *Bucur III*, Bucur filed another lawsuit in Riverside County Superior Court related to the linehaul contracts, *Bucur IV*.  Bucur sued Wasarhelyi, his attorneys, and Bucur's former attorney in *Bucur I*, for damages based on the loss of the linehaul contracts.  Wasarhelyi and his attorneys moved to strike the complaint as barred by *Bucur I*, and the court granted their motions.  At trial on Bucur's remaining claims against his former attorney, Bucur repeatedly testified inconsistently with his previous trial testimony in *Bucur I* and was admonished several times by the judge on the possible penalties for perjury.  Bucur testified inconsistently on what he sold Wasarhelyi, linehaul contracts or trucks.  Bucur attempted to explain the inconsistencies by testifying in *Bucur IV* that he testified falsely in *Bucur I* on advice of his former counsel.  After Bucur lost at trial, the court imposed section 128.7 sanctions of $2,120 against his attorney, George Saba.

## VI.  This Case

In January 2014, Appellants filed the current action in San Bernardino County Superior Court, claiming that Wasarhelyi (with the help of his wife) and FedEx (through

5

Ahmad) committed fraud and breach of contract and that FedEx (through Ahmad) wrongfully converted the linehaul contracts, and wrongfully allowed Wasarhelyi to sell the linehaul contracts to Ujkaj and Rodriguez. After receiving the complaint Ahmad's counsel wrote to Appellants' counsel, George Saba, requesting that he withdraw it. Although Ahmad served Appellants with a motion for sanctions pursuant to section 128.7 and arranged to have a motion for judgment on the pleadings filed the next day, Saba entered Ahmad's default and later refused to stipulate to set it aside. The court thereafter granted Ahmad's request to set aside the default and unbeknownst to Ahmad, Appellants filed a first amended complaint adding a new cause of action for breach of written contract against him, alleging that he had entered into a written agreement allowing Appellants to sell their linehaul contracts to a third party of their choosing, and a new cause of action for defamation, as well as other causes of action arising out of the loss of the linehaul contracts.

Ahmad filed a supplemental motion for sanctions pursuant to section 128.7 to address the filing of the first amended complaint.

Ahmad moved for judgment on the pleadings on Appellants' first amended complaint. The court granted the motion on the grounds that (1) the claims in the first amended complaint arose out of the same facts as *Bucur I* and were based on the same primary right, and (2) Appellants' claims were barred by principles of res judicata and collateral estoppel, the applicable statutes of limitation and judicial estoppel because their verified pleadings and testimony in *Bucur I* were inconsistent with their pleadings in this case, rendering them a sham intended to avoid the judgment on the pleadings.

The court found good cause to award section 128.7 sanctions of $16,648.75 against Appellants because their pleadings were not factually supported, were presented for an improper purpose, and were not withdrawn during the safe harbor periods.[4]

In November 2014 the trial court entered its final order, which included specific findings that Appellants' complaint and first amended complaint were not legally supported and were presented for an improper purpose, and granted monetary sanctions of $16,648.75 against Appellants and their attorney Saba. In December 2014 the court entered judgment of dismissal.

## DISCUSSION

### I. *Judgment on the Pleadings*

Appellants contend that the doctrine of judicial admissions does not apply because of the incompetence and fraud of Bucur's former attorney, that the doctrine of res judicata does not apply to issues which were not litigated but might have been litigated, and applies only to causes of action actually litigated to judgment in *Bucur I*, breach of oral contract and conversion. We reject these contentions.

### A. *Applicable Legal Principles*

Judgment on the pleadings is similar to a demurrer and is properly granted when the "complaint does not state facts sufficient to constitute a cause of action against [the] defendant." (§ 438, subd. (c)(1)(B)(ii); *Shea Homes Limited Partnership v. County of*

---

4    Appellants filed a motion for reconsideration, necessitating a response from Ahmad. However, after Ahmad responded and before the scheduled hearing date, Appellants took the motion off calendar.

7

*Alameda* (2003) 110 Cal.App.4th 1246, 1254.) We independently review the superior court's ruling on a motion for judgment on the pleadings to determine whether the complaint states a cause of action. In so doing, we must accept the factual allegations of the pleadings as true and construe them liberally. (*Rolfe v. California Transportation Com.* (2002) 104 Cal.App.4th 239, 242-243.) If a judgment on the pleadings is correct on any theory of law applicable to the case, we will affirm it regardless of the considerations used by the superior court to reach its conclusion. (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1216.)

"Res judicata prohibits the relitigation of claims and issues which have already been adjudicated in an earlier proceeding. The doctrine has two components. ' "In its primary aspect the doctrine of res judicata [or 'claim preclusion'] operates as a bar to the maintenance of a second suit between the same parties on the same cause of action.' . . . The secondary aspect is "collateral estoppel" or "issue preclusion," which does not bar a second action but "precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding." ' " (*Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1335.) "The doctrine of res judicata, whether applied as a total bar to further litigation or as to collateral estoppel, 'rests upon the sound policy of limiting litigation by preventing a party who has had *one fair adversary hearing* on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.' " (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 257; *Bernhard v. Bank of America National Trust & Savings Assoc.* (1942) 19 Cal.2d 807, 811.)

8

The prerequisite elements of res judicata in its claim preclusion form are (1) the claim in the present action must be identical to a claim litigated or that could have been litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. (*Bernhard v. Bank of America*, *supra*, 19 Cal.2d at p. 813*; Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 755 (*Thibodeau*)). Although res judicata is usually applied to judicial decisions, a prior judgment confirming an arbitration award may also bar a subsequent lawsuit based on the same cause of action. (§ 1287.4; *Thibodeau*, *supra*, at p.755; *Brinton v. Bankers Pension Services* (1999) 76 Cal.App.4th 550, 556-558; *Sartor v. Superior Court* (1982) 136 Cal.App.3d 322, 328.) "But the rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable." (*Thibodeau*, *supra*, at p. 755.) For purposes of res judicata, even an unconfirmed arbitral award is the equivalent to a final judgment. (*Id. at* p. 759; *Trollope v. Jeffries* (1976) 55 Cal.App.3d 816, 822.)

### B. Analysis

The trial court properly granted judgment on the pleadings on the bases of res judicata, judicial admissions and judicial estoppel. In their FACC in *Bucur I*, Wasarhelyi

9

sued Appellants for fraud and breach of contract, claiming that Appellants sold the linehaul contracts to him but did not tender the assets, interfered with the operations of the linehaul contracts, and wrongfully diverted payments made by FedEx. Appellants' FACC alleged that Wasarhelyi breached his contract with them by not tendering the full purchase price and diverting the revenue stream to his companies.

Appellants admitted that they had no substantive claims against FedEx, that their dispute was only with Wasarhelyi, and that they included FedEx merely to facilitate rescission of the Wasarhelyi/FedEx purchase agreement. Appellants also alleged that Wasarhelyi seized Bucur's trucks, collected the revenue from FedEx, and illegally sold the linehaul contracts to Ujkaj and Rodriguez. In sworn statements, Bucur admitted that his companies had breached their linehaul contracts by violating safety obligations and that he conspired with Wasarhelyi to defraud FedEx into believing that the linehaul contracts had been sold to Wasarhelyi when in fact Appellants only intended to use Wasarhelyi as a front to continue to perform the linehaul agreements themselves. The jury decided in Wasarhelyi's favor, i.e., that Appellants breached the contract to convey the linehaul contracts and trucks to Wasarhelyi. The jury also rejected Appellants' conversion claims. The court granted a nonsuit in favor of Wasarhelyi on Appellants' claim for fraud.

In this case Appellants contend that Wasarhelyi, Ahmad and others conspired to terminate the linehaul contracts, wrongfully forced Appellants to sell to Wasarhelyi, and diverted the revenue from the linehaul contracts. Appellants allege that Wasarhelyi promised to pay them $500,000 for the linehaul contracts but failed to do so. Appellants

also allege that Wasarhelyi and Ahmad defrauded Bucur by leading Bucur to believe he was assigning *trucks* to Wasarhelyi when in fact Bucur signed a document assigning *linehaul contracts.*

Appellants claim in this case that they were injured because Wasarhelyi, acting in concert with others, converted Appellants' linehaul contracts and trucks. However, in *Bucur I* the jury and the court found that it was Bucur who breached his promise to provide the contracts and trucks to Wasarhelyi. Further the court and jury rejected Bucur's claims of fraud in connection with this transaction. This case constitutes Appellants' fifth attempt to revisit the same basic claims that were, or could have been, raised in *Bucur I* and were thus barred from subsequent litigation. (*Thibodeau*, *supra*, 4 Cal.App.4th at pp.754-755.)

As to the newly added causes of action, including those for defamation and Business and Professions Code section 17200, the judgment in *Bucur I* is also conclusive because the new causes of action, although not expressly pleaded in *Bucur I*, were within the original scope of that action and were related to the same subject matter. (*Thibodeau*, *supra*, 4 Cal.App.4th at p.755.) Appellants cannot, by negligence or design, withhold issues and litigate them in consecutive actions. (*Ibid.*)

Here, each cause of action seeks redress for the same injury, Appellants' loss of the linehaul contracts and trucks. Since these claims all relate to the same primary right alleged in the FACC in *Bucur I* and the complaint in *Bucur II*—damages Appellants allegedly sustained in connection with the alleged wrongful taking of the linehaul contracts and trucks—the doctrine of res judicata bars the claims in this case.

11

The trial court here articulated yet another independent basis for dismissal. Appellants made judicial admissions in their pleadings in *Bucur I* that FedEx did nothing wrong in connection with termination of the linehaul contracts, but Appellants merely named FedEx as a party to facilitate proper rescission of the Wasarhelyi/FedEx contract. "The admission of fact in a pleading is a 'judicial admission.' " (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271.) A judicial admission in a pleading is not merely evidence of a fact; it is a conclusive concession of the truth of the matter. (*Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 218.) "Well pleaded allegations in the complaint are binding on the plaintiff at trial." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading § 455, p. 587.) "The trial court may not ignore a judicial admission in a pleading, but must conclusively deem it true as against the pleader." (*Thurman v. Bayshore Transit Management*, *Inc.* (2012) 203 Cal.App.4th 1112, 1155.) Because Appellants alleged in *Bucur I* that FedEx did nothing wrong in connection with the loss they incurred, the doctrine of judicial admissions bars them from taking an inconsistent position in their attempt to relitigate the same case.

Application of the principle of judicial estoppel also supported granting judgment on the pleadings. "The doctrine of judicial estoppel precludes a party from taking inconsistent positions in judicial or quasi-judicial proceedings." (*Claxton v. Waters* (2004) 34 Cal.4th 367, 379, fn.3.) " 'Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court . . . .' " (*Jogani v. Jogani* (2006) 141 Cal.App.4th 158, 175, quoting *Teledyne Industries*, *Inc. v. N.L.R.B.* (6th Cir. 1990) 911 F.2d 1214, 1218.) "Because of its harsh consequences, the doctrine should be

12

applied with caution and limited to egregious circumstances." (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 132.)

"The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' " (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987, quoting *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.)

Appellants took inconsistent positions in *Bucur II* and this case. They agreed to arbitrate their claims against Ahmad and FedEx in *Bucur II* but later refiled virtually the same case for litigation in this case. Both cases made essentially the same allegations against Ahmad, i.e., that the defendants wrongfully terminated the linehaul contracts, forced Appellants to sell to Wasarhelyi and acted in concert with Wasarhelyi to divert revenue from Appellants' linehaul contracts.

Once a case is in arbitration, litigation of a second case arising out of the same transactional nucleus of facts cannot be permitted. Subject to narrow exceptions not applicable here, once a dispute has been sent to arbitration, the courts may not act on that dispute absent an agreement to withdraw the controversy from arbitration. (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1200 (*SWAB Financial*); *McRae v. Superior Court* (1963) 221 Cal.App.2d 166, 171.) In such cases, the arbitrator, not the court, must resolve all questions relating to the controversy.

13

(*SWAB Financial*, *supra*, at p. 1200.)  This is particularly true when, as here, the parties stipulated to arbitration.  (*Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 90-91.)  Sending a case to arbitration suspends all judicial proceedings until the completion of arbitration, and trial courts lack any authority to institute proceedings which interfere with the completion of the arbitration process.  (*McRae*, *supra*, at p. 171.)

Finally Appellants made no showing that their stipulation to arbitrate, with the knowledge and consent of their former attorney, was the result of fraud, ignorance, or mistake.

Because all four requirements for its application were established, judicial estoppel barred litigation of this case in the superior court, irrespective of the fact that the superior court did not articulate this as a reason for granting judgment on the pleadings in Ahmad's favor.  (*Schbarum v. California Legislature*, *supra*, 60 Cal.App.4th at p. 1216.)

Moreover, while this case was pending in the San Bernardino County Superior Court, the arbitrator granted Ahmad's motion to dismiss *Bucur II*.[5]  For purposes of res judicata, an unconfirmed arbitration award is equivalent to a final judgment.  (*Thibodeau*, *supra*, 4 Cal.App.4th at p. 759; *Trollope v. Jeffries*, *supra*, 55 Cal.App.3d at p. 822.)  The arbitrator's dismissal of *Bucur II* in a separate case based on the same transactional nucleus of facts asserted in this case operates as res judicata to bar this case and provided

---

[5]     Although dismissal occurred while the appeal was pending, Appellants still had the opportunity to file arguments relating to the resolution of the arbitration in their reply brief, but did not avail themselves of that opportunity.

14

additional support for the grant of judgment on the pleadings in this case. (*Schabarum v. California Legislature*, *supra*, 60 Cal.App.4th at p. 1216.)

Based on res judicata, judicial admissions, and judicial estoppel, *Bucur I* and *Bucur II* operate to bar this action. Accordingly, we affirm the court's grant of judgment on the pleadings.

## II. The Trial Court's Imposition of Section 128.7 Sanctions

Appellants contend the trial court erred by imposing section 128.7 sanctions because there was no showing of subjective bad faith. We are not persuaded.

Under section 128.7, a court may impose sanctions if it concludes a pleading was filed for an improper purpose or was indisputably without merit, either legally or factually. (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 168 (*Guillemin*).) Here, the court did so based on its finding that the Appellants' claims were legally and factually frivolous.

A claim is factually frivolous if it is "not well grounded in fact" and is legally frivolous if it is "not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." (*Guillemin v*, *supra*, 104 Cal.App.4th at p. 167.) In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. (*Ibid*.) A claim is objectively unreasonable if "any reasonable attorney would agree that [it] is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650; *Guillemin*, *supra*, at p. 168.)

15

The Legislature enacted section 128.7 based on rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.), as amended in 1993 (rule 11). (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 518, fn. 2; *Guillemin*, *supra*, 104 Cal.App.4th at p. 167.) Therefore, federal case law construing rule 11 is persuasive authority on the meaning of section 128.7. (*Guillemin*, *supra*, p. 167.) Under rule 11, even though an action may not be frivolous when it is filed, it may become so if later-acquired evidence refutes the findings of a prefiling investigation and the attorney continues to file papers supporting the client's claims. (*Childs v. State Farm Mut. Auto. Ins. Co*. (5th Cir. 1994) 29 F.3d 1018, 1025.) Thus, a plaintiff's attorney cannot "just cling tenaciously to the investigation he had done at the outset of the litigation and bury his head in the sand." (*Ibid*.) Instead, "to satisfy [the] obligation under [section 128.7] to conduct a reasonable inquiry to determine if his [or her] client's claim was well-grounded in fact," the attorney must "take into account [the adverse party's] evidence . . . ." (*Ibid.*)

Section 128.7 provides for a 21-day period during which a party may avoid sanctions by withdrawing the offending pleading or other document. (§ 128.7, subd. (c)(1); *Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 590-591.) The Legislature included this safe harbor provision so that the statute would be remedial rather than punitive. (*Li*, *supra*, at p. 591.) If a party does not take advantage of the safe harbor period by withdrawing a frivolous filing, a court has broad discretion to impose sanctions. (*Kojababian v. Genuine Home Loans*, *Inc.* (2009) 174 Cal.App.4th 408, 421.) However, the application of section 128.7 must not "conflict with the primary duty of an attorney to represent his or her client zealously," through innovative but sensible

16

advocacy. (*Guillemin*, *supra*, 104 Cal.App.4th at pp. 167-168.) Moreover, a sanction must be limited to an amount that is sufficient to deter repetition of the improper conduct or comparable conduct by others who are similarly situated. (§ 128.7, subd. (d).)

We review a section 128.7 sanctions award under the abuse of discretion standard. (*Guillemin*, *supra*, 104 Cal.App.4th at p. 167.) We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. (*Shelton v. Rancho Mortgage & Investment Corp.* (2002) 94 Cal.App.4th 1337, 1345.) To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice. (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867.)

Regarding section 128.7's 21-day safe harbor provision, the court determined the original motion was served on April 1, 2014, 27 days before the April 28, 2014 hearing date. The supplemental motion was served by mail on May 6, 2014, well in advance of the hearing date of June 25, 2014.

The record shows Ahmad complied with the statutory safe harbor provision. He waited until 27 days after serving a copy of the motion on Appellants to file the motion and similarly held his supplemental sanctions motion before filing it. Moreover, the court correctly concluded that Ahmad provided more than 21 days' notice as to Appellants' failure to withdraw the complaint and the first amended complaint during the safe harbor period. Further, Appellants' filing of the first amended complaint after expiration of the safe harbor period, and following full briefing on Ahmad's first motion for sanctions did not absolve Appellants of section 128.7 sanctions relating to the filing of the original complaint. (*Eichenbaum v. Alon* (2003) 106 Cal.App.4th 967, 975-976.)

17

Appellants nonetheless contend that the court improperly awarded section 128.7 sanctions based on their failure to voluntarily set aside the default, because Ahmad did provide the requisite 21 days notice before the ex parte hearing resulting in the setting aside of the default. However, the court acknowledged the lack of safe harbor notice for the ex parte hearing and did not award section 128.7 sanctions on that basis.

Further, the trial court did not abuse its discretion in imposing sanctions. As discussed above, there were ample bases on which it could have concluded that Appellants' assertion of claims so clearly barred by res judicata, judicial admissions and judicial estoppel was objectively unreasonable. Filing a new complaint based on the same facts to evade a ruling made in a previous litigation constitutes sanctionable conduct under section 128.7. (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1431-1432.)

Based on the record before us, the court did not abuse its discretion in awarding sanctions.

### III. Request for Sanctions on Appeal

Ahmad seeks an award of $31,311, jointly and severally from Appellants and their counsel, as sanctions for filing a frivolous appeal (§ 907; Cal. Rules of Court, rule 8.276[6]). We notified Appellants and their counsel pursuant to rule 8.276 that we were considering imposing sanctions and gave them an opportunity to oppose the motion. Neither Appellants nor their counsel did so. Respondent submitted a letter brief together

---

6     All unspecified references are to the California Rules of Court.

with a declaration and supplemental declaration of Respondent's counsel in support of Respondent's letter brief.

Section 907 authorizes an award of monetary sanctions on appeal "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay." (rule 8.276(a)(1), (4) [authorizing sanctions for "[t]aking a frivolous appeal or appealing solely to cause delay," or for "[c]ommitting any other unreasonable violation of these rules"].)  An appeal that is prosecuted for an improper motive—to harass the other side or to delay the effect of an adverse judgment—or that any reasonable attorney would agree is totally and completely without merit will support an award of sanctions on appeal.  (*In re Marriage of Flaherty*, *supra*, 31 Cal.3d at pp. 649-650.)

"In determining whether an appeal indisputably has no merit, California cases have applied both subjective and objective standards.  The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective.  [Citation.]  Whether the party or attorney acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit.  [Citation.]  [¶] . . . [¶]  The objective and subjective standards 'are often used together, with one providing evidence of the other.  Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay.'  [Citation.]  An unsuccessful appeal, however, ' "should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit, or involves facts which are not amenable to easy analysis in terms of existing law,

19

or makes a reasoned argument for the extension, modification, or reversal of existing law." ' " (*Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 556-557 (*Kleveland*).) Appellate courts can, and often do, consider the prior conduct of attorneys and their clients in considering whether sanctions are appropriate. (See, e.g., *Papadakis v. Zelis* (1992) 8 Cal.App.4th 1146, 1148; *Kim v. Walker* (1989) 208 Cal.App.3d 375, 385; *Bistawros v. Greenberg* (1987) 189 Cal.App.3d 189, 193.)

Courts frequently have imposed additional sanctions, payable to the clerk of the court, to compensate the state for the cost to the taxpayers of processing a frivolous appeal. (*Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 830.) Appellate sanctions for frivolous appeals have ranged from $6,000 to $25,000. (*Kleveland*, *supra*, 215 Cal.App.4th at p. 560; *In re Marriage of Economou* (1990) 223 Cal.App.3d, 97, 108; *Bank of Cal. v. Varakin* (1990) 216 Cal.App.3d 1630, 1640.)

Preliminarily we note that the same reasons that support the trial court's award of sanctions also support the imposition of sanctions on appeal. This appeal lacked merit from its inception. When Appellants filed their opening brief, the judge and jury in *Bucur I* had already soundly rejected the predicate allegations that supported all of Appellants' four subsequent cases, that Wasarhelyi had breached his contract with Bucur, by finding that Bucur and his related entities were the ones who breached the agreement.

Further, by the time Appellants filed this case, they had already consented to arbitrate their virtually identical claims in *Bucur II*. Because Appellants had consented to arbitrate their claims, they were judicially estopped from litigating a case based on the same transactional nucleus of facts in superior court. Further, consensual removal of this

20

controversy to the arbitration forum effectively deprived the superior court of jurisdication. (*SWAB Financial*, *supra*, 150 Cal.App.4th at p. 1200.)

In addition, at the time Appellants filed this case, the *Bucur III* court had already rejected their central contention, i.e., that Wasarhelyi did not acquire the linehaul contracts, on collateral estoppel grounds.

Moreover, long before Appellants filed their notice of appeal in this case, the *Bucur IV* court rejected another iteration of Appellants' basic theory of recovery, by dismissing a reinvention of essentially the same case against Wasarhelyi and his counsel. During trial of the remainder of the case against Bucur's former attorney, the court repeatedly admonished Bucur regarding possible penalties for perjury because his testimony repeatedly directly conflicted with earlier sworn statements. Ultimately, as Bucur concedes in his opening brief in this case, he lost the entire case.

This appeal is also frivolous in light of the clear application of the doctrine of judicial admissions. In *Bucur I*, Appellants alleged that FedEx did nothing wrong but was merely named as a necessary party to effectuate rescission of the FedEx contract with Wasarhelyi. In this case, however, Appellants allege that FedEx acted illegally and in concert with Wasarhelyi to wrongfully deprive Appellants of the linehaul contracts. Appellants are bound by their judicial admission in *Bucur I* that FedEx did nothing wrong. (*Addy v. Bliss & Glennon*, *supra*, 44 Cal.App.4th at p. 218.)

Appellants attempt to avoid the judicial admissions doctrine by blaming their original attorney and arguing that they cannot be held accountable for the complaint he

21

prepared on their behalf.[7]  However, a client is bound by allegations his counsel made in pleadings.  (*Setliff v. E.I. Du Pont de Nemours & Co.* (1995) 32 Cal.App.4th 1525, 1534 [on demurrer, "[p]laintiff is bound by an admission in his pleadings" and his admission negates any attempt to contradict the admission].)

Given the numerous independent grounds rendering this appeal frivolous including, among others, res judicata, consent to arbitrate, judicial admissions, judicial estoppel and the rejection of various versions of the same case by four trial courts, we have no difficulty in concluding that Appellants and their counsel objectively and subjectively understood their appeal was frivolous when filed.

Our conclusion is further supported by developments that have occurred since this appeal was filed, which we may properly consider.  (See *Cohen v. General Motors Corp.* (1992) 2 Cal.App.4th 893, 896; *Childs v. State Farm*, *supra*, 29 F.3d at p. 1025.)  After Appellants filed their opening brief but before time for filing the reply brief had lapsed, the arbitrator in *Bucur II* granted the motion to dismiss.  This ruling, consistent with previous rulings in *Bucur I*, *III*, *IV* and this case, provided yet another independent basis—res judicata—for rendering this appeal is utterly frivolous.  In *Bucur II*, the arbitrator rejected Appellants' contentions that Wasarhelyi and Ahmad acted in concert to deprive them of the benefits of their linehaul contracts.

---

7    In *Bucur IV*, Appellants, in order to avoid the adverse impact of the judicial admission, attempted to establish that their attorney, who drafted the pleadings containing the judicial admission, committed malpractice.  The court granted judgment in favor of the attorney.

22

Also while this appeal was pending, the appellate decision in *Bucur III*, which affirmed the sustaining of a demurrer by the trial court, became final. Our colleagues in Division Two squarely rejected Appellants' contentions that FedEx and Wasarhelyi acted in concert to harm Appellants because collateral estoppel barred Bucur's claim against Wasarhelyi and Ujkaj. Bucur could make no claims predicated upon Wasarhelyi's breach of contract because the judgment in *Bucur I* precluded any argument based on Wasarhelyi's alleged breach of contract. Appellants' claims in this case were based on the same nucleus of facts as in *Bucur III*, which Division Two of this court resolved against Appellants. Under these circumstances, we have no trouble concluding this appeal is frivolous. (*Pollock v. University of Southern California*, *supra*, 112 Cal.App.4th at pp. 1431-1432; *Weber v. Willard* (1989) 207 Cal.App.3d 1006, 1010 [recognizing that repeated litigation of matters that were previously determined by final judgment constitutes sanctionable harassment].)

In determining the amount of sanctions to award we may consider the amount of the attorney fees on appeal, the amount of the judgment against the appellant, the degree of objective frivolousness and delay, and the need to discourage similar conduct in the future. (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 33-34.) The declarations of Ahmad's counsel establish that the reasonable attorney fees for the preparation of opposition to this appeal and letter brief on the issue of sanctions amounts to $31,311. The amount of the judgment below was $20,974.95. Thus, Ahmad had to spend more in opposing this appeal than the amount of the judgment. The difference between the amount owed and the costs of defense of this appeal supports the award of sanctions

23

against Appellants in the amount Ahmad requests. (*Kleveland*, *supra*, 215 Cal.App.4th at pp. 558-559 [sanctions awarded where there was no monetary judgment in the underlying case and appellant "has been put to the trouble of defending a frivolous appeal after being embroiled in litigation lasting two years . . . which proved to be meritless"].)

As exhaustively outlined above, four trial judges, one arbitrator and one appellate court have previously concluded that Appellants' repetitive claims in five versions of essentially the same case underlying this appeal are meritless. Appellants' persistent but vacuous pursuit of the same repetitive claims that give rise to this appeal constitutes an egregious example of frivolousness. Previous sanctions have not discouraged Appellants and their counsel from maintaining their futile quest to the detriment of their opponents. Therefore, there is a compelling need to deter conduct of this nature in the future.

Not only have Appellants caused Ahmad to pay expenses that he should not have had to incur, but they also have required this court to needlessly expend precious resources on their frivolous claims. "[T]he appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources" and thus the appropriate measure of sanctions should be sufficient to compensate the expense of processing, reviewing and deciding this appeal. (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 520.) Accordingly, we impose sanctions of $25,000, jointly and severally against Appellants and their counsel, payable to the clerk of this court. (*Kleveland*, *supra*, 215 Cal.App.4th at p. 560; *In re Marriage of Economou*, *supra*, 223 Cal.App.3d at p. 108; *Bank of Cal. v. Varakin*, *supra*, 216 Cal.App.3d. at p.1640.)

24

This opinion shall constitute a written statement of our reasons for imposing these sanctions. (*Bach v. County of Butte* (1989) 215 Cal.App.3d 294, 313.) In compliance with the requirements of the Business and Professions Code section 6086.7, a copy of this opinion shall be forwarded to the State Bar.[8]

DISPOSITION

The judgment is affirmed. In addition, this court awards sanctions jointly and severally against Attorney George A. Saba and Appellants in the amount of $31,311 payable to Ahmad and $25,000 payable to the clerk of this court no later than 30 days after the remittitur is filed. The clerk of this court is directed to deposit said sum in the general fund.

Prager, J.[*]

WE CONCUR:


McDONALD, Acting P. J.


AARON, J.

---

[8]     This section provides that "A court shall notify the State Bar of any of the following: [¶] . . . [¶] (3) The imposition of any judicial sanctions against an attorney, except sanctions for the failure to make discovery or monetary sanctions of less than one thousand dollars ($1000)."

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.