Filed 3/26/24  Wright v. Sun Life Assurance Company of Canada CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT S. WRIGHT,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA,<br><br>    Defendant and Respondent. | G062122<br><br>(Super. Ct. No. 30-2022-01241461)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.

Robert S. Wright, in pro. per., for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart and Sean P. Nalty for Defendant and Respondent.

This action arises out of plaintiff Robert S. Wright's attempts for over 25 years to recover long-term disability benefits under an insurance policy (the policy) issued by the predecessor of defendant Sun Life Assurance Company of Canada (Sun Life). Wright initially sued Sun Life in British Columbia. Following trial, the British Columbia Court found Wright failed to prove his claims and this finding was affirmed on appeal in British Columbia.

Wright then filed a lawsuit against Sun Life in Los Angeles (the Los Angeles action) in which he sought "a new trial of the claim." Sun Life demurred to the operative pleading on grounds including his lawsuit was barred by the doctrine of res judicata, now known as claim preclusion. Sun Life also moved for an award of sanctions against Wright. Wright voluntarily dismissed the Los Angeles action without prejudice.

In January 2022, Wright filed the instant action, seeking the same policy benefits. Sun Life demurred, again arguing, inter alia, Wright's claims were barred by the doctrine of claim preclusion. The trial court sustained the demurrer on that ground, without leave to amend. The court also granted Sun Life's motion for sanctions, awarding Sun Life $23,028 in sanctions against Wright.

The sole issue on appeal is whether the trial court abused its discretion by sanctioning Wright under Code of Civil Procedure section 128.7.[1] We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

I.

THE POLICY

The Prudential Group Assurance Company of England (Canada) (hereafter referred to as Prudential) issued the policy to Wright which became effective January 1,

_____

[1] All further statutory references are to the Code of Civil Procedure.

[2] This section is largely based on facts and procedural history set forth in the trial court's June 27, 2022 order sustaining Sun Life's demurrer and awarding Sun Life sanctions.

1992. The policy: (1) provided income replacement benefits in the event of "total and residual disability"; (2) included a regular cost of living adjustment and a "Future Insurance Guarantee Option" (FIGO), permitting Wright to elect to increase the amount of coverage in certain circumstances; and (3) provided Wright had no obligation to pay premiums when he was totally disabled.

In September 1994, Sun Life, a wholly owned subsidiary of defendant Sun Life Financial, Inc., acquired Prudential. In January 1995, Prudential transferred all property, assets, and liabilities to Sun Life.

II.

WRIGHT'S 1993 ACCIDENT AND INSURANCE CLAIM

In December 1993, Wright was injured in a skiing accident. He contends the accident left him totally disabled for work in his career of general dentistry, but able to retrain as a dental specialist and work mainly as an educator with limited hours at a dental practice. In March 1995, he sold his practice and moved to Los Angeles where he "pursued a specialty education." In June 1995, he submitted a claim on the policy through Canadian Dental Services Plan, Inc. (CDSPI) which sponsored and administered the policy. CDSPI is a non-profit corporation made up of 11 professional associations for Canadian dentists.

Wright and Sun Life thereafter disputed the date from which the claim should pay. In its order sustaining Sun Life's demurrer and awarding sanctions, the trial court in the instant case summarized the parties' dispute as follows: "Wright maintained, and still maintains, that under the Policy, he was considered disabled from the date of his skiing accident in December 1993. Sun Life apparently paid benefits from the date Wright sold the practice, about 15 months later. [¶] While Sun Life paid benefits for a few months, it soon thereafter stopped paying. Wright alleges this 'stop and go' practice continued for several years, until he was owed nearly two years in arrearages. In 1998, represented by counsel, he filed suit against Sun Life Assurance in the Supreme Court of

3

British Columbia [(the British Columbia action)]. While the pleadings are unclear on this point, it appears this was the original filing of the [British Columbia action]. Wright successfully recovered some, but not all, of the claimed arrearage. [Citation.] [¶] In November 2001, Sun Life terminated benefits under the Policy after its investigator concluded that Wright had returned to his former regular occupation, i.e., general dentistry. Wright's attorney wrote to Sun Life contesting its interpretation of the Policy, to no avail. [Citation.] [(]Wright complains at length about the nature of Sun Life's investigation, which he alleges was deceptive and may have violated state and federal law.) Wright, who had just turned 50, attempted to elect a second increase in coverage under the FIGO. He reasoned that because his claim had been terminated on the grounds that he was back to work, he was eligible for the increase. Sun Life ignored this request."

III.

WRIGHT FILES AN AMENDED COMPLAINT IN THE BRITISH COLUMBIA ACTION

In March 2004, Wright's attorney filed an amended complaint in the British Columbia action. In its order sustaining Sun Life's demurrer and awarding sanctions, the trial court in the instant case described the course of that lawsuit as follows:

"The case took years to resolve. Wright alleges the trial judge was biased against him, with the bias first becoming evident in November 2009, when a trial date was canceled at the last minute for Sun Life Assurance's lead trial counsel to have a hip operation. Nearly five years later, in July 2014, the judge ruled Wright was no longer entitled to a trial by jury and set a firm trial date of March 2015, with Wright ordered to prosecute the case in pro per if he was unable to find a lawyer. Wright claims he had a lawyer who was able to represent him at trial, just not on that specific date. [Citation.] It appears he indeed prosecuted trial in pro per.

"Following a bench trial, the British Columbia judge found for Sun Life Assurance on Wright's claims. With respect to the termination of total disability benefits, the judge found that because Wright had failed to meet his burden to show that

4

he was 'Totally Disabled' as that term was defined in the Policy after November 2001, he was not entitled to benefits. [Citation.] For the same reason, he was not entitled to a declaration of ongoing total disability coverage. [Citation.]

"With respect to Wright's claim for residual disability benefits for the period between December 1993 (the accident) and March 1995 (the sale of the practice), the judge found that while Wright had established he was 'Residually Disabled,' his failure to make necessary financial disclosures to Sun Life made it impossible for Sun Life Assurance to calculate his average monthly income, a necessary figure for residual disability payments. [Citation.]

"With respect to the coverage increase under the FIGO, the judge ruled Wright was ineligible for a coverage increase because he failed to submit a proper written application for the increase. His letter of November 27, 1996 was insufficient. [Citation.]

"Finally, with respect to Wright's claim for aggravated damages, the judge acknowledged that Wright found Sun Life Assurance's and its investigators' tactics offensive. But the judge found Wright attempted to cover up his activities in California, meaning Sun Life Assurance was entitled to investigate his activities on its own. [Citation.] In sum, Wright identifies 44 separate instances of alleged judicial bias at trial. [Citation.]

"Wright took an appeal from the verdict. The Court of Appeal for British Columbia affirmed. [Citation.] Wright does not contend the appellate court was biased, but he contends the opinion contains 108 separate legal and factual errors. [Citation.]

"Wright did not seek review in the Supreme Court of Canada because 'such a case as this has a remote chance of being heard as that Court only deals with matters or issues of a national interest.' [Citation.] He acknowledges the Court of Appeal for British Columbia 'is the de facto court of last resort.'"

5

## IV.

### WRIGHT FILES A LAWSUIT AGAINST SUN LIFE IN LOS ANGELES SUPERIOR COURT

Wright filed a lawsuit against Sun Life in the Los Angeles action. As in the British Columbia action, in the Los Angeles action he alleged he was entitled to a FIGO increase and complained about the handling of his disability claim. He also accused the trial judge in the British Columbia action of bias and argued the appellate court made numerous errors in its ruling. In his first amended complaint, he stated he sought "a new trial of the claim."

Sun Life filed a demurrer and a motion for sanctions against Wright. In March 2021, Wright voluntarily dismissed the Los Angeles action without prejudice.

## V.

### WRIGHT FILES THE INSTANT ACTION IN ORANGE COUNTY

In January 2022, Wright, acting in propria persona, initiated the instant action by filing a 316-page complaint in Orange County Superior Court asserting a wide array of claims against Sun Life and others, including breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, breach of fiduciary duty, fraud, unjust enrichment, unfair insurance practices, and declaratory relief. Wright alleged he is entitled to a FIGO increase and Sun Life wrongfully terminated his benefits and mishandled the investigation of his claim. He sought recovery of the FIGO increase, all alleged arrearages paid at the FIGO-increase-inclusive rate, reinstatement of the policy, and a declaration of ongoing coverage, among other unspecified compensatory damages. He also sought punitive damages based on, inter alia, Sun Life's conduct during the investigation. In paragraphs 757 and 758 of the

6

complaint,[3] Wright demands a trial by jury. He argues because there was no jury in the British Columbia action, the court's final judgment against him in that action does not preclude a jury trial in the instant action.

VI.

## THE TRIAL COURT SUSTAINS SUN LIFE'S DEMURRER WITHOUT LEAVE AND AWARDS SANCTIONS AGAINST WRIGHT

Sun Life filed a demurrer to the claims alleged against it in the complaint and also filed a motion for sanctions under section 128.7. The trial court sustained the demurrer without leave to amend on the ground Wright's claims against Sun Life are barred by res judicata, now referred to as the claim preclusion doctrine, and dismissed those claims with prejudice.

The trial court also granted in part and denied in part Sun Life's motion for sanctions. The trial court granted the motion in part to the extent Sun Life sought an award in the amount of the attorney fees it incurred in preparing and filing both the demurrer and the motion for sanctions. The trial court denied the motion as to Sun Life's request for an award in the amount of the attorney fees it incurred in the Los Angeles action and in the instant action in the preparation of a cross-complaint for malicious prosecution and injunctive relief against Wright. The court ordered Wright to pay Sun Life $23,028 in sanctions; the sanctions order was entered on June 27, 2022.

---

[3] In paragraph 757 of the complaint, under the heading "Plaintiff is Seeking a Trial by Jury" (boldface omitted), Wright states in part: "Plaintiff anticipate[s] Defendants will file a notice to dismiss asserting that the claims in this matter are barred by res judicata and collateral estoppel or statute of limitations[]. Plaintiff's claim is not time barred because the litigation, injury, harm, complaint, demand for production of documents and arears are continuous and there is fresh evidence and four additional defendants . . . . Plaintiff is seeking a Trial by Jury in Orange County." In paragraph 758, Wright asserts the Seventh Amendment to the United States Constitution "does not preclude a trial by jury in this civil action" because the trial in the British Columbia actions was not tried to a jury or a federal or state court of the United States.

## VII.

### WRIGHT APPEALS FROM THE JUNE 27, 2022 ORDER

On December 20, 2022, Wright filed a notice of appeal (filed on optional Judicial Council form AAP-002) on which two boxes were checked indicating the appeal was taken from a purported judgment of dismissal after an order sustaining a demurrer and "[o]ther," namely a "Sanctions Order" requiring Wright to pay $23,028 in legal costs. The date of the judgment or order was identified as June 27, 2022.

On January 23, 2023, this court issued an order notifying the parties that the court was considering dismissing the appeal on its own motion, staying preparation of the record on appeal, and inviting the parties to file letter briefs addressing appealability issues and the timeliness of Wright's appeal. Wright and Sun Life each filed letter briefs in response to this court's order.

On March 20, 2023, on its own motion and citing the lack of an appealable order, this court ordered the appeal dismissed in part "to the extent that the appeal purports to challenge the court's order sustaining Sun Life's demurrer." This court's order further stated: "The appeal may proceed as a challenge to the sanctions order."[4]

---

[4] In the March 20, 2023 order, this court also observed that in its June 27, 2022 order, the trial court granted CDSPI's motion to quash service of summons. The order states: "The appeal must be dismissed to the extent appellant seeks to challenge the order quashing service of summons on [CDSPI]. This was a conceptually distinct motion filed by a different party from the orders actually referenced in the notice of appeal. There is no way to reasonably construe the notice of appeal as including the order quashing service of summons."

DISCUSSION

I.

SECTION 128.7 AND THE GOVERNING STANDARD OF REVIEW

"Under section 128.7, a court may impose sanctions if it concludes a pleading was filed for an improper purpose or was indisputably without merit, either legally or factually." (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 189 (*Bucur*).) Under section 128.7, subdivision (b), parties and attorneys who present the court with pleadings or similar papers must certify that (1) the pleadings or papers are "not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," and that (2) "[t]he claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (§ 128.7, subd. (b)(1)-(2).) Subdivision (c) authorizes the court to impose an "appropriate sanction" on parties, attorneys, or law firms that violate subdivision (b), or are responsible for violations of subdivision (b). (§ 128.7, subd. (c).)

We review an order imposing sanctions under section 128.7 for abuse of discretion. (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1121.) "We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.] To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440.)

II.

THE TRIAL COURT DID NOT ERR BY CONCLUDING WRIGHT'S COMPLAINT AGAINST SUN LIFE IS LEGALLY FRIVOLOUS

A claim is legally frivolous to warrant an award of sanctions under section 128.7 "if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" (*Bucur, supra*, 244 Cal.App.4th at

9

p. 189.)  "[T]o obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable.  [Citation.]  A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.'"  (*Ibid.*)

Here, the trial court found Wright's claims against Sun Life in the instant action to be legally frivolous,[5] explaining in its order:  "For the reasons set forth in the demurrer analysis, the complaint is barred by res judicata against Sun Life.  That Wright has added new theories of recovery doesn't affect the primary right analysis.  That Wright has added new defendants doesn't affect the preclusion analysis as to Sun Life.  Furthermore, paragraphs 757–758 of the complaint make clear Wright's purpose in bringing this action:  he simply wants to re-try the [British Columbia action], this time in front of a jury instead of a judge.  This sort of do-over is exactly what res judicata prohibits, and any reasonable attorney would find Wright's attempted do-over totally meritless.  [¶] In opposition, Wright doesn't even mention § 128.7.  Instead, he focuses on Sun Life's conduct in removing the [Los Angeles action] to federal court (it was later remanded) and on Sun Life's cross-complaint here.  He also criticizes Sun Life for demurring (as is its right) rather than filing an answer that denies the allegations of the complaint.  [¶] On this record, Sun Life meets its burden of establishing that the Complaint is legally frivolous."

"The doctrine of res judicata or claim preclusion dictates that in ordinary circumstances a final judgment on the merits prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th

---

[5]  Wright repeatedly states in his opening brief the trial court did not find his claims against Sun Life to be factually frivolous.  The trial court did not make a finding whether or not his claims against Sun Life were factually frivolous—as it already found they were legally frivolous.

825, 844 (*Wassmann*).) "Causes of action are considered the same if based on the same primary right." (*Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 325); see *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798 ["under the primary rights theory, the determinative factor is the harm suffered"].) Claim preclusion "encompasses '"matters which were raised or could have been raised, on matters litigated or litigable"' in the prior action." (*Wassmann, supra*, 24 Cal.App.5th at p. 844.)

"The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions." (*Sutphin v. Speik* (1940) 15 Cal.2d 195, 202.) "'"'"The doctrine . . . rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.'"' [Citation.] "'"If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.'"'" (*Wassmann, supra*, 24 Cal.App.5th at p. 844; accord *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 92–93.)

In his opening brief, Wright contends the trial court erred by concluding his complaint in the instant actions was legally frivolous. As it is fundamental to appellate review we presume the appealable order is correct, it is Wright's burden to show error. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58; see *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.) The burden applies equally to Wright appearing in propria persona as those represented by counsel. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.)

In his lengthy appellate briefs, Wright has failed to provide analysis or citations to relevant legal authorities showing the trial court abused its discretion by concluding Wright's claims against Sun Life are legally frivolous. Our record shows

11

Wright litigated his dispute with Sun Life over many years in British Columbia to a final judgment against him which was thereafter affirmed by the Court of Appeal for British Columbia. Wright attempted to relitigate that dispute by initiating the Los Angeles action in which he sought a new trial on the matter. He dismissed that action after Sun Life filed a demurrer and a motion for sanctions asserting the same basis that underlies the court's finding of legal frivolousness here—Wright's claims against Sun Life are barred by the doctrine of claim preclusion. And yet Wright initiated the instant action against Sun Life seeking a new trial of the same dispute but this time, before a jury.

In his complaint in the instant action, Wright acknowledges his "anticipat[ion] [Sun Life] will file a notice to dismiss asserting that the claims in this matter are barred by res judicata and collateral estoppel or statute of limitations." He continues to state in the complaint: "[Wright]'s claim is not *time barred* because the litigation, injury, harm, complaint, demand for production of documents and arrears are continuous and there is fresh evidence and four additional defendants." (Italics added.) Other than offering his conclusions the doctrine of claim preclusion does not apply because his lawsuits "are not identical," Wright does not explain in his complaint or in his appellate briefs *how* the claims against Sun Life in the instant action involve a different primary right than that at issue in the British Columbia action and the Los Angeles action, or why the doctrine is otherwise inapplicable.

Wright has therefore failed to carry his burden of showing the trial court abused its discretion in finding the claims he asserted against Sun Life in the instant action to be legally frivolous.

## III.

### SUBSTANTIAL EVIDENCE SUPPORTS THE AMOUNT OF SANCTIONS IMPOSED

Wright argues insufficient evidence supports the amount of sanctions awarded by the trial court. We disagree.

12

Section 128.7, subdivision (d) gives the trial court discretion in selecting the appropriate sanction, and "[a] sanction imposed for violation of subdivision (b) shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated." The sanction may be "directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." (§ 128.7, subd. (d).)

The trial court concluded a sanctions award was appropriate to deter Wright from further pursuit of legally frivolous litigation, stating: "A fee award is warranted here. Wright litigated the [British Columbia action] for 20 years. He lost at the trial level and on appeal. Rather than accept the outcome, he filed the [Los Angeles action] seeking to relitigate the same issues. He then dismissed the [Los Angeles action] and filed this action, again seeking to relitigate the same issues. A fee award will serve to deter him from filing another suit on the same grounds."

Wright does not argue the trial court abused its discretion by finding a sanctions award would effectively deter Wright from pursuing legally frivolous litigation in the future. Instead, Wright challenges the amount of sanctions awarded to Sun Life. The trial court awarded Sun Life sanctions based on attorney fees incurred in the preparation of its demurrer and the sanctions motion in the instant action. Sun Life's motion was supported by attorney Sean P. Nalty's declaration in which he stated: (1) he was the only attorney who represented Sun Life in the instant action; (2) his "preparation of the demurrer and related pleadings filed in [the instant action] was time consuming due to [Wright's] 318 page complaint and ten causes of action," and the need to review Wright's 66-page first amended complaint filed in the Los Angeles action as well as the trial court's and appellate court's opinions in the British Columbia action; (3) Nalty spent 30.3 hours drafting the documents filed in support of the demurrer, 1.5 hours preparing

13

the request for judicial notice, .4 hour attempting to meet and confer with Wright on the demurrer, and anticipated spending an additional three hours to prepare for and attend the hearing on the demurrer; (4) he also spent 12.9 hours preparing the motion for sanctions and his declaration; and (5) Nalty charges $380 per hour.

Nalty filed a supplemental declaration in support of the motion for sanctions in which he stated he additionally spent 7.2 hours analyzing Wright's opposition to Sun Life's demurrer and drafting the reply brief, plus 5.3 hours analyzing Wright's opposition to the motion for sanctions, drafting the reply brief, and drafting the instant declaration supporting the reply brief.

The trial court found the time Nalty spent preparing Sun Life's demurrer and motion for sanctions was reasonable, and further, the attorney fees incurred in such efforts recoverable as sanctions. The court awarded a total amount of sanctions against Wright in the amount of $23,028.

The trial court denied Sun Life's request for sanctions to the extent it sought the recovery of attorney's fees incurred in the Los Angeles action on the ground the trial court lacked authority to sanction misconduct occurring in a different court. The court also denied the motion for sanctions to the extent Sun Life sought the recovery of attorney fees incurred in preparing its cross-complaint in the instant action, explaining: "The cross-complaint was not 'a direct result of the violation'; rather, it was Sun Life's attempt to secure affirmative relief. Fees on the cross-complaint are not recoverable."

Nalty's declarations, establishing the amount of fees incurred by Sun Life in demurring to the complaint and moving for sanctions in the instant action constitutes substantial evidence supporting the court's award of sanctions against Wright in the amount of $23,028. We find no error.

14

## DISPOSITION

The order is affirmed.  Respondent to recover costs on appeal.


                              MOTOIKE, J.

WE CONCUR:


GOETHALS, ACTING P. J.


DELANEY, J.