Filed 8/23/24  Wright v. Wright CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PHILIP SPENCER WRIGHT, Respondent, v. IULIIA PLATOKHINA WRIGHT, Appellant; OLEG VOLKOV, Objector and Appellant. | B330901 (Los Angeles County Super. Ct. No. 19STFL03890) |

APPEAL from orders of the Superior Court of Los Angeles County, Wendy L. Wilcox, Judge.  Reversed.

Oleg Volkov, in pro per., for Objector and Appellant, and for Appellant Iuliia Platokhina Wright.

Larson, Stephen G. Larson, Andrew J. Bedigian and Kimberly E. Wilkinson for Respondent.

_____

Iuliia Platokhina Wright and her counsel, Oleg Volkov, appeal from orders imposing sanctions and disqualifying Volkov from further representation in a dissolution action between Iuliia and Philip Wright.[1]  The court awarded monetary sanctions against Volkov and struck a fees request Volkov filed on behalf of Iuliia that Philip contended was meritless, excessive, and harassing.  The court disqualified Volkov after concluding he had an improper contingency fee arrangement with Iuliia.

Our review of the family court's ruling indicates the family court relied in large part on an improper basis for awarding sanctions, specifically the excessive nature of Iuliia's response to Philip's sanctions motion itself for which Iulia and Volkov did not receive notice or the required safe harbor to withdraw that response.  Accordingly, we reverse the order granting monetary sanctions against Volkov and striking Iuliia's fees request.

We further hold the evidence did not support a finding of a contingency fee arrangement between Iuliia and her counsel.  We therefore reverse the disqualification order.

## BACKGROUND

Philip and Iuliia married in February 2019 and separated 18 days later.  They had no children, no community property, and the court did not order spousal support.

### 1.  *Earlier sanctions order*

Although not at issue in this appeal, we briefly summarize the proceedings concerning an earlier sanctions order against Volkov.

---

[1]  Because the parties share a last name, we refer to them by their first names.  No disrespect is intended.

On March 3, 2022, the same court awarded Philip prevailing party fees under Family Code section 6344. On April 18, 2022, Iuliia appealed from the fees award. On August 31, 2022, while her appeal was pending, Iuliia filed a request to vacate or set aside the March 3 fees award.

On October 21, 2022, Philip moved for sanctions against Volkov under Code of Civil Procedure section 128.7. Philip argued Iuliia's August 31, 2022 request to set aside the fees award was untimely, without merit, and the family law court had no jurisdiction to grant the request because of the pending appeal. Philip contended Iuliia's request was filed for the improper purposes of harassing Philip and Philip's counsel, increasing litigation costs, and obtaining more attorney fees from Philip.

Following a hearing, the court granted Philip's sanctions motion on December 5, 2022. The court first found Iuliia had not withdrawn her set-aside request either during or after the statutory 21-day safe harbor period.[2] On the merits, the court noted Iuliia conceded in her papers that the court had no jurisdiction given the pending appeal, yet Iuliia, despite knowing this, had not withdrawn her set-aside request. The court found this was objectively unreasonable conduct on the part of Volkov.

---

[2] Iuliia filed a document purporting to withdraw her set-aside request, but the court observed Iuliia had never sought to take the hearing on her request off-calendar. Further, in the document purporting to withdraw the request, Iuliia continued to seek to set aside the fees by making an "informal" request to do so or asking the court to set aside the fees on the court's own motion.

The court sanctioned Volkov $25,000 and struck Iuliia's set-aside request.[3]

Iuliia appealed the sanctions order. Briefing in that appeal currently is stayed pending the filing of a supplemental record.

## 2. *Sanctions and disqualification motions at issue in the instant appeal*

On January 10, 2023, Iuliia filed a motion seeking $225,900 in attorney fees from Philip under Family Code section 2030, subdivision (a)(1) to cover past and future anticipated costs in five pending appeals, including her appeal from the March 3, 2022 order awarding Philip attorney fees.[4] In support, Iuliia submitted a 10-page declaration attaching over 500 pages of exhibits, and Volkov submitted a 19-page declaration attaching more than 200 pages of exhibits. Iuliia also requested the court take judicial notice of five sets of documents totaling over 1,500 pages.

On March 13, 2023, Philip filed a sanctions motion against Volkov under Code of Civil Procedure section 128.7 contending Iuliia's January 10 request for fees was filed for an improper purpose. Philip argued Volkov "continues to relitigate the same tired issues through voluminous, frivolous[ ] appeals and via Iuliia's instant [fees request]," which "is mainly presented for the improper purpose of harassing Philip and churning fees." Philip

---

[3] The sanctions order stated the monetary sanctions were against both Iuliia and Volkov, but the court stated in a later order its intent was to award sanctions against Volkov only.

[4] The January 10 motion is not in the record before us, but we discern its content from memoranda of points and authorities filed subsequently.

4

complained, "Iuliia's filings are incredibly dense, almost impenetrably so, and filled with wide-ranging irrelevancies—forcing Philip to incur substantial and unnecessary attorney fees simply to try to make sense of them."

Philip acknowledged Family Code section 2030 authorizes awards of attorney fees for proceedings related to the underlying family law proceeding, but argued there was a public policy exception when fee requests are used as a weapon for harassment. Philip further argued Iuliia could not demonstrate a need for the requested fees, the appeals for which she sought fees had been brought in bad faith, and the "sheer volume and objectionable form of" Iuliia's filings "demonstrate Mr. Volkov's improper purpose of harassing Philip and needlessly increasing Philip's litigation costs." Philip noted, in addition to the large page count of documents included with Iuliia's filings, the memoranda and supporting declarations violated court rules and contained too many lines per page with incorrect font size.

Philip requested a sanction of $66,650, which he contended represented the reasonable attorney fees incurred and anticipated in responding to Iuliia's fees request. Philip also requested the court strike Iuliia's fees request, in which case Philip would seek a lesser monetary sanction of $48,690.

In support of his sanctions motion, Philip submitted a declaration from his counsel outlining the incurred and anticipated attorney fees. Among the listed anticipated fees were those that would be incurred to review and respond to Iuliia's opposition to Philip's sanctions motion, and also to respond to Iuliia's fees request.

Philip also filed a motion to disqualify Volkov as Iuliia's counsel. Philip argued Volkov by his own admission was not

competent to represent Iuliia in a family law matter. Philip further argued Volkov's payment arrangement with Iuliia constituted a contingency fee agreement, which is prohibited in a dissolution action. In support, Philip quoted filings by Iuliia stating Volkov had advanced most of the legal costs at risk of delayed payment or nonpayment, which Philip argued indicated Volkov had agreed to represent Iuliia with the expectation that he only be paid should she prevail.

### 3.    *Iuliia's response to sanctions and disqualification motions*

Iuliia filed an opposition to the sanctions motion. She argued that Philip had not provided advance notice of his sanctions motion as required by the statutory safe harbor provision. She further disputed that she could not demonstrate a need for attorney fees or that her pending appeals were in any way improper. She argued the public policy exception to Family Code section 2030 did not apply when attorney fees were sought for matters within the same proceeding as the dissolution action, as opposed to different but related proceedings. Finally, she argued Philip had not met his burden to show her fees request and related filings were unjustified or irrelevant.

In a separate filing, Iuliia opposed the motion to disqualify counsel. Iuliia argued that Philip lacked standing to bring the motion, that Volkov was competent, and that she did not have a contingency fee arrangement with Volkov.

Iuliia filed a declaration in support of her opposition to both the sanctions motion and the disqualification motion attaching over 500 pages of exhibits. Volkov also filed a supporting declaration with about 20 pages of exhibits. Iuliia further requested the court take judicial notice of the five sets of

6

documents totaling over 1,500 pages for which she requested judicial notice in her January 10 fees request.

Iuliia additionally filed an objection to consideration of Philip's sanctions motion based on his failure to comply with the statutory safe harbor requirement, again arguing Philip had not provided advance notice of his sanctions motion, or alternatively that service was improper. Iuliia cross-referenced a motion to quash that she claimed further elaborated on her arguments—that motion is not in the appellate record, but the court docket indicates Iuliia filed a motion to quash service and supporting declaration several days before she filed her opposition and objection to the sanctions motion.

In support of her objection based on the safe harbor requirement, Iuliia filed a declaration from Volkov attaching an eight-page exhibit list and over 500 pages of exhibits.

On April 6, 2023, after Philip filed his replies in support of his two motions, Iuliia filed a request for an evidentiary hearing as to whether Philip properly served his sanctions motion and complied with the statutory safe harbor requirement. That same day, Iuliia filed a witness list that included Volkov, Philip's counsel and their staff, employees of a messenger service, and post office employees, all of whom Iuliia stated would testify regarding the issue of proper service.

The next day, Iuliia filed objections to declarations of Philip's counsel in support of the sanctions motion and the reply.

The day before the hearing on the sanctions and disqualification motions, Iuliia filed an amended memorandum of points and authorities in support of her January 10 request for fees.

## 4. *Court's ruling*

At the April 11, 2023 hearing on the sanctions and disqualification motions, the court began by summarizing the content of Philip's sanctions motion, including that it was brought in response to Iuliia's January 10, 2023 fees request and that Philip contended the appeals for which Iuliia sought fees were brought in bad faith and thus the fees request fell under the public interest exception to Family Code section 2030. The court further summarized Philip's argument that the volume and form of Iuliia's filing demonstrated its improper purpose, in particular the over 2,000 pages of material and Volkov's failure to follow the court's formatting rules.

The court then noted Iuliia's 11 filings in response to the sanctions motion, stating the filings "go[ ] into, for the most part, an issue of service." The court observed Philip in reply had submitted proofs of service indicating Philip provided a copy of his sanctions motion to Volkov more than 21 days before Philip filed his motion with the court, which the court found satisfied the statutory safe harbor requirement. The court further noted Iuliia had not withdrawn her January 10, 2023 request for attorney fees, which remained pending.

The court denied Iuliia's request for an evidentiary hearing, finding her arguments regarding improper service not persuasive. The court continued, "And it's concerning how many documents have been filed by the respondent with respect to this, as I stated. It's not appropriate necessarily to file some of this after the reply brief. . . . And the number of filings with respect to the responding to the request for order is excessive and looks to be harassing." The court stated its "tentative is to grant [Philip's] motion."

8

Continuing with its oral tentative ruling, the court addressed the reasonableness of Philip's monetary sanctions request. The court found, "[T]he number of documents that [Philip] has had to respond to, like I said, it is excessive, and it could be over 2,000 pages, considering that several documents were filed just in the last week in order for us to be here today and with respect to this hearing." The court awarded $40,000 in sanctions against Volkov, and struck Iuliia's January 10, 2023 fees request. The court said to Volkov, "[T]he court has sanctioned you. And now you're being sanctioned again because you've continued to file meritless papers, and you're not adhering to the court rules." The court continued, "I have talked to you previously about how you have cited cases and left out information, which I don't find appropriate. But we need to address this because it's continued to be excessive. And I find it, as I stated, harassing."

Arguing against the tentative ruling, Volkov contested Philip's claim of proper service. The family law court noted Volkov "obviously kn[e]w" about Philip's sanctions motion as indicated by the numerous filings in opposition. Volkov responded he did not receive the sanctions motion in February as Philip claimed, but rather in March when Philip filed it with the court, the implication being that Philip did not comply with the safe harbor requirements. The court stated, "You could have withdrawn your January 10 [fees request] at any time, and you still haven't done it, have you?" Volkov agreed the fees request was still pending.

Turning to the merits of the sanctions motion, Volkov argued Iuliia's fees request was not improper because the appeals for which she requested fees were related to the underlying

9

dissolution proceedings. The court stated Volkov was "missing the point" of Philip's argument, which was not that the appeals were unrelated to the dissolution proceedings, but that the public policy exception barred Iuliia from seeking fees to which she otherwise might be entitled. Volkov explained Iuliia's filings were "voluminous" in order to rebut falsehoods by Philip's counsel.

After additional argument along the lines of that summarized above, the court adopted its tentative ruling and ordered Volkov to pay the $40,000 by September 29, 2023.

After a recess, the court addressed Philip's motion to disqualify Volkov. Citing *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, the court found Philip had standing to bring the disqualification motion, given the particular importance of maintaining high standards of ethics in family law cases. The court observed that the instant case, like *Kennedy* is "a very highly contentious case" that "shockingly has gone on the way that it has gone on over, at best, an 18-day marriage."

On the merits, the court concluded Volkov's payment arrangement with Iuliia, as indicated by Volkov in previous hearings and filings, constituted a "contingency fee arrangement" prohibited in dissolution proceedings. The court did not "come to the conclusion of incompetency necessarily, although your papers sound like they're walking that line." The court believed Volkov was "cutting and pasting from cases and dumping them in your papers without understanding what the case is about."

After allowing Volkov to respond to these arguments, the court announced it would grant the motion to disqualify. The minute orders from the hearing note the court adopted its oral tentative ruling but provide no additional information.

10

Iuliia timely appealed.  After she filed her opening brief, Philip filed a response stating he took no position on Iuliia's arguments.

## DISCUSSION

### A.  The Court Improperly Based the Sanctions Order on Appellants' Response to the Sanctions Motion

Appellants challenge the sanctions order on three bases, contending 1) the court erred in finding Philip complied with the statutory safe harbor requirements; 2) the court impermissibly imposed sanctions based on appellants' response to Philip's sanctions motion; and 3) Iuliia's fees request and filings in support were justified and thus the sanctions motion is without merit.  We agree with appellants' second argument, and therefore need not reach the others.

#### 1.  Relevant law and standard of review

Code of Civil Procedure section 128.7 provides that when an attorney signs and files "a pleading, petition, written notice of motion, or other similar paper," the attorney thereby certifies the filing, inter alia, "is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," and "[t]he claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."  (Code Civ. Proc., § 128.7, subds. (b)(1), (2).)  A court may impose monetary and nonmonetary sanctions for violations of this provision after notice and reasonable opportunity to respond.  (*Id.*, subds. (c), (d).)

11

Before a court may impose sanctions pursuant to a motion under section 128.7, the statute requires that the nonmoving party have at least 21 days' notice of the intended motion before the scheduled hearing "during which [period] a party may avoid sanctions by withdrawing the offending pleading or other document." (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 190 (*Bucur*); Code Civ. Proc., § 128.7, subd. (c)(1).)

Further, "when imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed." (Code Civ. Proc., § 128.7, subd. (e).)

"We review a section 128.7 sanctions award under the abuse of discretion standard. [Citation.] We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.] To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice." (*Bucur*, *supra*, 244 Cal.App.4th at p. 190.)

### 2.    Analysis

Appellants contend the only explanation the court gave for the sanctions was, "[T]he number of filings with respect to the responding to the request for order is excessive and looks to be harassing." Appellants interpret this statement to refer not to Iuliia's fees request that prompted the sanctions motion, but rather appellants' response to the sanctions motion. Appellants contend their response to the sanctions motion itself could not support an award of sanctions because they had not received notice that their response was subject to sanctions nor given a safe harbor period in which to withdraw their response.

12

We agree with appellants that their response to Philip's sanctions motion could not itself support an award of sanctions, at least until and unless Philip filed another sanctions motion directed at the response, or the court issued an order to show cause (OSC) on that basis. Absent a separate sanctions motion or an OSC, appellants had no notice that their response to the sanctions motion would be subject to sanctions, nor were they given the required statutory safe harbor period within which to withdraw or modify their response.

The only conduct for which appellants arguably had received adequate notice of sanctions and the required safe harbor period was Iuliia's January 10, 2023 fees request and documents filed in support of that request. That request and its supporting documents were the target of Philip's sanctions motion, and the sole basis on which the court could award sanctions at the April 11, 2023 hearing (assuming proper service, an issue we do not reach).

We further agree with appellants that the court's statements at the hearing indicate the court improperly relied on appellants' response to the sanctions motion as a basis for imposing sanctions. Immediately before stating its tentative ruling granting the sanctions motion, the court stated, "And it's concerning how many documents have been filed by the respondent with respect to this, as I stated. It's not appropriate necessarily to file some of this after the reply brief. . . . And the number of filings with respect to the responding to the request for order is excessive and looks to be harassing."

The reference to the "reply brief" is Philip's reply to appellants' response to his sanctions motion, so the court was admonishing appellants for filing additional documents in

13

support of their opposition to the sanctions motion after Philip had already replied.  The court then referred to the "excessive" "filings with respect to the responding to the request for order." We discern that the "request for order" refers to Philip's sanctions motion, the only request for order to which appellants filed a response.  Although Iuliia's January 10, 2023 fees request could also be considered a "request for order," that cannot be what the family law court was referring to, because appellants did not respond to their own request for order.

Later, the family law court stated, "[T]he number of documents that [Philip] has had to respond to, like I said, it is excessive, and it could be over 2,000 pages, considering that several documents were filed just in the last week in order for us to be here today and with respect to this hearing."  Again, the "several documents" filed "in the last week" "with respect to this hearing" must refer to appellants' additional documents in support of their opposition, including their request for an evidentiary hearing, witness list, and two sets of objections to declarations filed by Philip's counsel in support of the sanctions motion.

Because the court based its sanctions order in large part on appellants' response to the sanctions motion, grounds for which appellants had not received adequate notice and safe harbor warning, we reverse the monetary sanctions against Volkov and the sanction of dismissal of Iuliia's January 10, 2023 fees request.

**B.**     **The Court Abused Its Discretion In Concluding That Iuliia had a Contingency Fee Agreement With Counsel**

Appellants argue Philip did not have standing to move to disqualify Iuliia's counsel Volkov, and further argue the family

law court abused its discretion in concluding Iuliia and Volkov had an impermissible contingency fee agreement justifying disqualification. " 'Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.]' [Citation.]" (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1354.) We review de novo whether a party has standing to bring such a motion. (See *Blue Water Sunset, LLC v. Markowitz* (2011) 192 Cal.App.4th 477, 485.) Under these standards of review, we conclude Philip had standing to bring his motion to disqualify Volkov, but the court abused its discretion in finding Volkov had a contingency fee agreement with Iuliia.[5]

1. **Applicable law**

    a. *Standing to bring disqualification motion*

" 'A "standing" requirement is implicit in disqualification motions.' [Citation.] A party moving to disqualify counsel must have a legally cognizable interest that would be harmed by the attorney's conflict of interest." (*Moreci v. Scaffold Solutions, Inc.* (2021) 70 Cal.App.5th 425, 432.) Generally, standing is found when there is a current or former attorney-client relationship between the party seeking disqualification and the attorney sought to be disqualified. (*Ibid.*) Some courts, however, " 'have slightly broadened the scope of that general rule,' holding that a

_____

[5] As discussed in our Background section, Philip moved for disqualification on two bases, incompetence and an improper contingency fee agreement. The court granted disqualification solely on the latter basis, stating it did not "come to the conclusion of incompetency necessarily, although [Volkov's] papers sound like they're walking that line."

15

nonclient may bring a disqualification motion based on an attorney's breach of a duty of confidentiality owed to the nonclient." (*Ibid.*)  The moving party nonetheless " 'must meet stringent standing requirements, that is, harm arising from a legally cognizable interest which is concrete and particularized, not hypothetical.' [Citation.]" (*Id.* at p. 434.)  The standing requirement " 'protects against the strategic exploitation of the rules of ethics and guards against improper use of disqualification as a litigation tactic.' [Citation.]" (*Ibid.*)

> b.  *Prohibition on contingency fee arrangements in dissolution proceedings*

Rules of Professional Conduct, rule 1.5(c)(1) prohibits an attorney from agreeing to, charging, or collecting "any fee in a family law matter, the payment or amount of which is contingent upon the securing of a dissolution or declaration of nullity of a marriage or upon the amount of spousal or child support, or property settlement in lieu thereof."  Even prior to the adoption of this rule, case law held contingency fee agreements in dissolution actions were void as against public policy to the extent such agreements promoted divorce by incentivizing attorneys to discourage reconciliation between the parties.  (See *Krieger v. Bulpitt* (1953) 40 Cal.2d 97, 100.)

### 2.  Analysis

We conclude Philip had standing to bring his disqualification motion based on a purported violation of Rules of Professional Conduct, rule 1.5(c)(1).  As discussed, one purpose of that rule is to prevent attorneys in dissolution proceedings from discouraging reconciliation.  The parties to a dissolution action have a legally cognizable interest in reconciliation, if possible, an

16

interest that is potentially jeopardized if either party has a contingency fee agreement with his or her counsel. Thus, although Philip is neither a current nor former client of Volkov, his interests are impacted if Volkov's fee arrangement with Iuliia impedes reconciliation.

On the merits, however, we hold the evidence does not support the court's finding of a contingency fee agreement. In arguing below that Iuliia and Volkov had such an arrangement, Philip relied on a statement in Iuliia's January 10, 2023 fees request that Volkov had "advanced most of the legal costs, and undertook the representation at the risk of delayed payment or nonpayment." Philip also relied on Iuliia's income and expense declaration filed June 21, 2022, which lists under "Attorney fees" that Iuliia owed approximately $190,000 in fees, with a notation stating, "not expected to be paid in full by Iuliia Wright." Philip argued, "[b]etween advancing costs, not expecting Iuliia to pay fees, and only expecting payment if he prevails, Mr. Volkov unquestionably has a contingency fee arrangement with Iuliia in a family law matter."

At the disqualification hearing, the court concluded, "[Volkov is] advancing the costs [of litigation], and [Volkov] may get paid by the other side. And that is contingency. That's a contingency fee arrangement, which is prohibited here." Later, the court said, "[Volkov] think[s] that there is going to be this payday by advancing these fees and continuing to litigate in the way that [Volkov is] litigating, which sounds [like a] contingency fee arrangement."

We disagree with the family law court that Philip's cited evidence demonstrates a contingency fee agreement. Under a typical contingency fee arrangement, the client agrees that in the

17

event counsel obtains a money judgment in the client's favor, the client will pay counsel a percentage or some other agreed-upon portion of that judgment.  (See Vapnek et al., Cal. Practice Guide: Professional Responsibility & Liability (The Rutter Group 2023) Ch. 5-B, § 5.77 ["A contingent fee is any arrangement that ties the attorney's fee to some measure of the client's success in the matter.  If the attorney is unsuccessful or there is no recovery, the contingent fee is not payable."]; Black's Law Dict. (12th ed. 2024) p. 401, col. 2 [defining "contingent fee" as "[a] fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court," "usu[ally] calculated as a percentage of the client's net recovery"].)

Philip below identified no evidence that Iuliia had agreed to pay Volkov a percentage of any judgment in her favor, or that Volkov's payment was contingent on obtaining a particular result.  Rather, Philip quoted statements from Iuliia's fees request under Family Code section 2030, a provision which "ensure[s] that each party has access to legal representation" by empowering the family law court to "order[ ], if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding."  (Fam. Code, § 2030, subd. (a)(1).)  In other words, Volkov was not seeking fees from Iuliia contingent on a judgment in her favor, but fees from Philip, not contingent on any

18

particular result but instead based on the court's authority to compel the one party to pay the attorney fees of the other party.[6]

A party's reliance on Family Code section 2030 to pay his or her attorney is permissible under the Family Code.  As a family law treatise observed, provisions like Family Code section 2030 largely obviate the need for contingency fee arrangements in dissolution proceedings.  (See Hogoboom & King, Cal. Practice Guide:  Family Law (The Rutter Group 2024) Ch. 1-E, § 1:253 [because the Family Code empowers court "to award attorney fees and costs to a financially disadvantaged spouse," "a contingency fee arrangement is not needed to afford such clients a parity of legal representation," citing Fam. Code, §§ 2030–2032, 2255].)  In short, the court erred in concluding Iuliia's seeking fees from Philip demonstrated a prohibited contingency fee agreement, and thus erred in disqualifying Volkov.

---

[6] This is not to say Iuliia's particular fees request had merit, a question on which we express no opinion.  We merely note that her and Volkov's reliance on Family Code section 2030 was not equivalent to a prohibited continency fee arrangement.

## DISPOSITION

The sanctions order and the disqualification order are reversed. Each party shall bear his or her costs on appeal.

NOT TO BE PUBLISHED.


                                                    BENDIX, J.

We concur:



        ROTHSCHILD, P. J.



        KELLEY, J.*

---

    **\*** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.