Filed 3/6/26  Marriage of Bustamante CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re the Marriage of REBECA and CANDELARIO BUSTAMANTE. | B348380 |
| | (Los Angeles County Super. Ct. No. 18CMFL00647) |
| REBECA BUSTAMANTE, Respondent, v. CANDELARIO BUSTAMANTE, Appellant. | |

APPEAL from a post-judgment order of the Superior Court of Los Angeles County, Kimberly Dotson, Judge.  Affirmed.

Claery & Hammond, Lance R. Claery, and Kai W. Lucid for Appellant.

RRC Law Group and Roldan D. Rivera Cruz for Respondent.

\* \* \* \* \* \*

The husband in a dissolution action filed this appeal initially raising three challenges, but abandons two of those challenges in his late-filed reply brief and the last of the three lacks any support in the record or the law.  The husband's briefs are chock full of misrepresentations and the record he presents to this court on appeal is misleadingly incomplete.  Not only do we affirm the sole order the husband has not abandoned, but so egregious is the conduct on appeal that we also impose sanctions, in an amount to be determined by the family court, against the husband and his attorneys jointly and severally for bringing and persisting in this patently frivolous appeal.

## FACTS AND PROCEDURAL BACKGROUND

### I.  The Marriage

Rebeca Bustamante (wife) and Calendario Bustamante (husband) married in February 1992 and had two children.  Although the marriage began to deteriorate in 2012, they did not separate until January 2018.

### II.  The Family Home

In 2006, husband and wife purchased a family home in Carson, California (the home).

In 2015, husband filed for bankruptcy.  To evade his creditors and avoid foreclosure on the home, husband quitclaimed

title to the home to wife, as her separate property, for no consideration.[1]

Husband later testified that he continued to make payments on the home's outstanding mortgage, although husband was inconsistent in stating the amount of those payments—at various times testifying that he made payments totaling $57,000, $62,000, $72,000, or $230,000. At no point did husband ever provide documentation to substantiate his claimed payments.

The home was sold in March 2023, and the net proceeds of $218,000 were deposited into husband's counsel's trust account.[2]

## III. Dissolution Trial and Entry of Judgment

In August 2018, wife filed for marital dissolution.

The matter proceeded to a bench trial over the course of five days in January, March, May, and August 2023.[3]

The family court ruled that husband's quitclaim deed effected a "transmutation of the [home] to the [wife] as her separate property," but that husband "is entitled to reimbursement" from the sale proceeds for the amount he paid to reduce the mortgage on the home "from 2015 to 2019." Because

---

[1] The deed itself was not introduced into evidence at the dissolution trial.

[2] Wife had intimated that husband had understated the amount of the sale proceeds and that he had been in wrongful personal possession of the funds.

[3] Although the claims at trial included issues such as the date of separation, spousal support, valuation of husband's business, and division of other assets, the issue on appeal concerns only the home.

husband failed to provide "any numbers" at trial as to what he paid, the court ordered husband and wife to "meet and confer to talk about" the "specific amount" of reimbursement. The court emphasized, however, that title to the home was *not* a "reserved" issue (as the issue of title had been decided).

On April 11, 2024, the court entered a judgment of dissolution reiterating the transmutation ruling.

Husband did not appeal that judgment.

## IV. Post-Ruling Meet and Confer Efforts

Between September 2023 and June 2024, wife's attorneys sent at least five separate meet-and-confer communications to husband's attorneys asking for documents that would substantiate husband's claim for reimbursement from the sale proceeds of the home.[4] Wife also provided documentation showing husband was not entitled to any reimbursement because wife *overpaid* the mortgage.

Husband's attorneys never articulated a specific dollar amount husband paid toward the mortgage, and never provided any proof that he made a payment. Instead, they responded that the family court had "erred in determining" that the home was "transmuted" to wife "as separate property."

In a June 27, 2024 email, wife's counsel (1) told husband's counsel that his responses were "unproductive" and "obstructive"; and (2) warned that, absent disclosure of proof of husband's payments on the home, wife would seek an "award" of "271 sanctions."

The email was met with silence.

---

[4] Husband was represented by different counsel during trial. By September 2023, he was represented by the same counsel representing him on appeal.

## V.   Wife's Motion for Disbursement of Sale Proceeds and for Sanctions

On February 24, 2025, wife filed a request for orders (1) compelling husband, as pertinent here, to disburse the entirety of the home's sale proceeds to wife, and (2) for sanctions (in the amount of $8,000 of attorney fees) under Family Code section 271 due to husband's non-responsive and dithering conduct during the meet-and-confer process, which wife argued amounted to "bad faith tactics" that "unreasonably delay[ed] resolution" of the disposition of the sale proceeds and "forced [wife] to incur unnecessary legal fees."[5]

Husband opposed. He filed a two-page form indicating only that he did "not consent" to the orders wife requested. His attorney also filed a five-paragraph declaration that characterized the 18 months of back-and-forth emails as "merely preliminary negotiations"; he also faulted *wife's* counsel for not "reach[ing] out" after he did not respond to wife's counsel's June 27, 2024 email threatening sanctions.

The family court held a hearing on wife's requests on June 16, 2025. The court granted wife's request for immediate disbursement of all the proceeds from the sale of the home to wife—without any reimbursement to husband—because husband's "right to any reimbursement" had "lapsed" and been "forfeited" due to husband's "fail[ure] to submit any evidence or engage in any meaningful meet and confer efforts for over two

---

[5]   Wife initially requested $15,000 in attorney fees, but subsequently reduced her request to $8,000.

All further statutory references are to the Family Code unless otherwise indicated.

years." The court also granted wife's request for sanctions under section 271, although it awarded only $4,000.

## VI. Husband's Appeal

Husband timely filed a notice of appeal from the reimbursement ruling and sanctions order.

Along with her respondent's brief on appeal, wife filed a motion for sanctions against husband and his counsel on the grounds that (1) "[t]he appeal is frivolous," (2) "[t]he appeal is jurisdictionally barred," (3) husband's opening brief "contains material misrepresentations of the record," and (4) "[t]he appeal was filed for purposes of delay." We notified husband and his counsel that we were considering imposing sanctions and gave them an opportunity to oppose the motion, although they had already presented such arguments in their untimely reply brief. (See Cal. Rules of Court, rule 8.276(c).)

## DISCUSSION

Before us now are (1) the merits of husband's appeal, and (2) wife's motion for sanctions on appeal.

## I. Merits of Husband's Appeal

In his opening brief, husband challenged three rulings by the family court: (1) the ruling that the home was transmuted to wife's separate property; (2) the ruling that husband was not entitled to any reimbursement for mortgage payments he made on the home; and (3) the ruling imposing $4,000 in sanctions under section 271. In his late-filed reply brief (and ostensibly in response to wife's request for sanctions), husband expressly withdrew the first two challenges. Those two challenges are thus no longer before us. (E.g., *DeYoung v. Del Mar Thoroughbred Club* (1984) 159 Cal.App.3d 858, 863, fn. 4.) We consequently only address husband's challenge to the sanctions award.

6

As pertinent here, section 271 empowers a family court to make an "award of attorney's fees," "in the nature of a sanction," if a party or a party's attorney "frustrates the policy of the law to . . . reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (§ 271, subd. (a); *In re Marriage of Rangell* (2023) 95 Cal.App.5th 1206, 1219 (*Rangell*); *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 290 ["[s]ection 271 authorizes an award of attorney fees and costs as a sanction for uncooperative conduct that frustrates settlement and increases litigation costs"].) It is enough to show that a party engaged in "dilatory and uncooperative conduct" that "frustrated the policy of . . . cooperation among litigants"; there need not be a further showing that the conduct was "frivolous or taken solely for the purpose of delay." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1317-1318.) We review an award of sanctions under section 271 for an abuse of discretion (*Featherstone v. Martinez* (2022) 86 Cal.App.5th 775, 783-784), and review any subsidiary factual findings for substantial evidence (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 995).

The family court did not abuse its discretion in awarding attorney fees as a sanction under section 271 because husband's conduct during the meet-and-confer process was both dilatory and uncooperative. Rather than deny husband's claim for reimbursement at the conclusion of trial due to lack of substantiation, the family court ordered the parties to "meet and confer to talk about" "the specific amount of reimbursement." Instead of engaging in this process created for husband's own benefit, husband stonewalled: Despite wife's repeated attempts to engage husband, he refused to specify what amount of reimbursement he sought (which was otherwise impossible to

7

determine from his widely varying trial testimony on the amount he paid toward the mortgage) and refused to provide documentation in support of *any* amount of reimbursement—all the while maintaining that the family court's transmutation ruling, which the court said was *not* "reserved" and which was reflected in the judgment husband elected not to appeal, was wrong. The family court did not abuse its discretion in concluding that this level of noncooperation frustrated the policy of cooperation among litigants and unnecessarily caused wife to incur legal fees. (See, e.g., *Rangell*, *supra*, 95 Cal.App.5th at p. 1220 [sanctions appropriate for similar conduct of delay and disregard of court orders]; *In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1100 [sanctions appropriate where husband made "no showing that the trial court abused its discretion in concluding that his attempt to do an impermissible 'end run' around the 2008 judgment required wife to incur attorney fees she can ill afford"].)

Husband resists this conclusion with what boil down to three arguments.

First, he argues that what the family court viewed as obstructive noncooperation was really just "an unfortunate misunderstanding between counsel." This argument is, at bottom, a request that we take a different view of the record than the family court—a request that is beyond our purview when we are limited to reviewing the family court's ruling for an abuse of discretion. (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) Under the pertinent standard of review, what matters is that substantial evidence supports the family court's view—and here it does, for the reasons articulated above. Husband goes a step further in accusing *wife* of being

8

noncooperative, urging that *she* had the duty to continue to meet and confer under the Civil Discovery Act, and that *she* is to blame for not pestering husband when he failed to respond to the June 27, 2024 email.  These accusations are not well taken, as the obligation to meet and confer before filing motions under the Civil Discovery Act is wholly irrelevant when, as here, a court has issued a post-trial order to *both* parties to meet and confer; and we decline to hold that one party's failure to pester the other nonresponsive party somehow means the nonresponsive party is the one who has been aggrieved.

Second, husband argues that the family court's order violated "fundamental due process requirements" because the court "fail[ed] to provide adequate notice and opportunity to be heard."  This argument is unsupported by the law and the record.  Due process requires notice and an opportunity to be heard (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178), and that is precisely what husband got:  Husband received notice when wife filed a written request for section 271 sanctions, and husband had his opportunity to be heard when he filed a written opposition and appeared at the hearing on wife's request.

Third and finally, husband argues that the family court's sanctions order is invalid because the court did not adhere to the "statutory requirement" to provide a "detailed recitation of conduct" justifying sanctions.  But there is no such "statutory requirement" in section 271.  (§ 271.)  Courts will not imply a requirement that a court make express findings unless a statute so specifies (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1272 [noting the "general rule that findings of fact are not required in connection with law and motion matters" unless "the Legislature has mandated that a trial court express its reasons or

9

factual determinations on the record"]; *California Resources Production Corp. v. Antioch City Council* (2024) 107 Cal.App.5th 481, 496; cf. *Rodriguez v. Brill* (2015) 234 Cal.App.4th 715, 726-727), and section 271 does not so specify.  The only authority husband cites in support of this argument pertains to Code of Civil Procedure section 177.5, which unlike section 271, requires the court to "recite in detail the conduct or circumstances justifying [its] order."  (Code Civ. Proc., § 177.5.)  Nor is such a requirement to issue a written ruling of findings mandated by due process.  (*In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 970 [due process does not obligate a trial court issuing sanctions to provide a "written order detailing its reasons"].)[6]  What is more, husband never asked the family court to make specific findings, and his failure to do so—when such a request would have cured the shortcoming he cites on appeal—constitutes a forfeiture.  (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 647.)

## II.     Request for Sanctions on Appeal

An appellate court has the authority to impose sanctions for filing a "frivolous appeal."  (Code Civ. Proc., § 907; Cal. Rules of Court, rule 8.276(a)(1).)  Sanctions may be warranted if an

---

[6]     The hearing on wife's request for sanctions was not reported, and husband did not seek an appropriate substitute for appeal like a settled statement.  Thus, husband has failed to provide an adequate record to support his contention that the family court did not provide *any* factual basis for the sanctions order.  (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. . . . ' . . . Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'"].)

appeal is either *objectively* frivolous or *subjectively* frivolous. (*Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 834; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649.) An appeal is objectively frivolous only "'"when any reasonable attorney would agree that the appeal is totally and completely without merit."'" (*Malek*, at p. 834.) To avoid chilling zealous advocacy, this objective standard requires more than a showing that the appeal simply lacked merit. (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1422.) An appeal is subjectively frivolous if the party or his lawyer "prosecuted [the appeal] for an improper motive" "to harass the [opposing party] or delay the effect of an adverse judgment." (*Personal Court Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 191; *Flaherty*, at p. 650.) The two types of frivolity have some overlap: They are "ordinarily used together, with one sometimes providing evidence relevant to the other" (*Malek*, at p. 834), such as when an appeal's "complete lack of merit" objectively implies that the appeal was "brought . . . for the purpose of delay" (*id.* at p. 836; *Flaherty*, at pp. 649-650).

Husband's appeal is objectively frivolous because the three arguments he asserted on appeal were arguments that any reasonable attorney would agree "totally and completely" lack merit.

Husband's challenge to the family court's transmutation ruling was objectively frivolous. It is unquestionably outside the scope of this appeal, which is limited to the June 2025 sanctions order. Husband's failure to appeal the April 2024 judgment of dissolution—the judgment that resolved the issue of transmutation—precludes him from challenging transmutation in this appeal. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751,

11

761, fn. 8 ["California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited"]; Code Civ. Proc., § 906 [review court is "not authorize[d] . . . to review any decision or order from which an appeal might have been taken"].)  What is more, husband's challenge to the transmutation ruling rests on the contention that he was denied due process because the issue of transmutation did not arise until "near the conclusion of trial" and thus caught him off guard, but the factual premise of his challenge is affirmatively refuted by the record, which unequivocally shows that the parties presented evidence regarding transmutation as early as the first day of trial (when they both testified that wife paid the mortgage since 2019), also presented evidence on the third and fourth days of trial (when it was husband who testified that he "transferred the title" to wife), and affirmatively argued the issue of transmutation on the fourth day of trial.  Most troubling, husband tried to bolster his due process challenge by concealing from this court what actually happened at trial:  The opening brief misrepresents that the trial lasted only three days and asserts the issue of transmutation was first raised "[o]n the third day of trial," creating the false impression—based on the husband's characterization of the proceedings and his appendix, which wholly omits any minute orders or transcripts from the first two trial days—that transmutation was raised on the *last* day of trial.

Husband's challenge to the family court's reimbursement ruling was objectively frivolous.  In challenging that ruling, husband asserts that he was denied due process because the court concluded he was not entitled to reimbursement on a theory of waiver or a "lapse"—both of which came out of the blue.  This

12

assertion has no basis in the record.  Although the family court's ruling used the word "lapse[]," the full text of the court's ruling—that husband's right to reimbursement had "lapsed" and been "forfeited" due to his "fail[ure] to submit any evidence or engage in any meaningful meet and confer efforts for over two years"—makes abundantly clear that the court's finding was based on husband's failure to carry his evidentiary burden of showing payments entitling him to reimbursement and not on theretofore novel theories of laches or statute of limitations.  No reasonable attorney would have found husband's strawman challenge to the reimbursement ruling to have even the slightest whiff of merit.

Husband's challenge to the sanctions order is also objectively frivolous because, as detailed above, it is based on inapposite legal authority and is wholly unsupported by the record.  By asserting both in the briefing on appeal and in opposition to sanctions that "no suggestion was made by either party that they would be seeking court compulsion as to these issues, or otherwise that they would be seeking sanctions," husband blatantly misrepresents the record which includes wife's June 27, 2024 email and earlier January 29, 2024 email expressly notifying husband that wife will be pursuing sanctions.  Husband presses on with objectively frivolous arguments in his opposition to sanctions on appeal, where he continues to insist that *wife's* counsel bears "responsibility" for the "breakdown" in meet-and-confer  "communications" despite the indisputable record showing husband dodged the reimbursement issue for 18 months.

Husband's appeal is also subjectively frivolous.  We can infer that the appeal was brought for an "improper motive" from

13

the degree to which each of husband's arguments lacks merit.[7] Indeed, two of the three arguments were *so* meritless that husband withdrew them in his reply brief once confronted with their obvious flaws and consequential request for sanctions. Contrary to husband's suggestion that his abandonment of issues "eliminate[s]" "any potential harm to the judicial process," that withdrawal does not render the arguments irrelevant to our analysis because wife and this Court had to respond to and analyze the arguments—either on their merits or with respect to whether they support sanctions on appeal. Even more indicative of an intent to harass or delay the effect of the reimbursement ruling and sanctions order is husband's curated presentation of the record to omit the portions unfavorable to him and thereby give his frivolous arguments a patina of merit.

Because this appeal is both objectively and subjectively frivolous, we exercise our authority to impose sanctions on husband and his attorneys, jointly and severally. We therefore grant wife's motion against husband and his counsel, but direct the family court to determine the amount of reasonable fees and

---

[7] One of husband's attorneys also reports that his "mental state" to handle this case was "severely impacted" by the deaths of two close family members during the pendency of the appeal. While we sympathize with this attorney's experiences of loss, husband is also represented by the named partner of the law firm and no showing has been made that *that* attorney was unable to step in or, at a minimum, review the positions advocated on appeal for frivolousness. Husband's attorney also proffers no explanation as to why his loss would cause him to affirmatively misrepresent the record on appeal (or to continue doing so in his response to this Court's order contemplating sanctions filed just last month).

14

costs based on evidence wife shall provide.[8] (See *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 194 [in determining sanctions award for respondent, appellate court must consider "the amount of the judgment against the appellant, the degree of objective frivolousness and delay, and the need to discourage similar conduct in the future"].)

---

[8] Although wife seeks $17,277.20 in attorney fees and costs and husband did not oppose this amount, it is unclear from wife's counsel's billing records what specific amount was incurred in connection with this appeal. For instance, there are no billing entries showing the time spent reviewing and responding to husband's opening brief.

## DISPOSITION

The order is affirmed. In addition to her costs on appeal, wife shall be awarded reasonable fees and costs, in an amount to be determined by the family court, against husband and his attorneys, jointly and severally. Husband's attorneys and the clerk of this court are each ordered to forward a copy of this court's opinion to the State Bar upon issuance of the remittitur. (Bus. & Prof. Code, §§ 6086.7, subd. (a)(3), 6068, subd. (o)(3).)

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
 MOOR


_____, J.
 KIM (D.)